IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ———————————————— | ) |
| JUDICIAL WATCH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:16-cv-2046-TSC |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| ———————————————— | ) |

**JOINT STATUS REPORT**

Pursuant to the Court's Minute Order dated December 7, 2016, Plaintiff Judicial Watch ("Plaintiff") and Defendant United States Department of Justice ("Defendant") submit the following Joint Status Report:

This matter arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended.[1]  It concerns a FOIA request made by Plaintiff on July 7, 2016 to the Federal Bureau of Investigation ("FBI"), a component of Defendant, seeking the following:

    A.    Any and all FD-302 forms prepared pursuant to the Federal Bureau of Investigations' investigation of former Secretary of State Hillary Clinton's use of a private e-mail server during her tenure. (FOIAPA Request No. 1354023-000)

    B.    Any and all records of communications between any agent, employee, or representative of the Federal Bureau of Investigation regarding, concerning, or related to the aforementioned investigation.  This request includes, but is not limited to, any related communications with any official, employee, or representative of the Department of Justice, the Executive Office of the President, the Democratic National Committee, and/or the presidential campaign of Hillary Clinton. (FOIAPA Request No. 1354029-000)

---

[1] Pursuant to Local Civil Rule 16.3(b)(9), this action is exempt from the requirements of Local Civil Rule 16.3 and Rules 16(b) and 26(f) of the Federal Rules of Civil Procedure.

C.     Any and all records regarding, concerning, or related to the meeting between Attorney General Lynch and former President Bill Clinton on June 27, 2016. (FOIAPA Request No. 1354040-000).

Notwithstanding their good faith efforts to confer, the parties have been unable to reach agreement on a proposed schedule at this time.  Accordingly, each party's statement as to how it proposes this case to proceed is set forth below.

## PLAINTIFF'S STATEMENT

1.     As Defendant concedes, Plaintiff did not request the entire investigative file or all records related to the investigation concerning Secretary Clinton's use of a non-state.gov email account to conduct official government business.  Plaintiff only requested three very specific categories of records.

2.     At issue in this lawsuit is only two categories of records: (1) FD-302 forms prepared by the FBI during the investigation; and (2) communications about the investigation.

3.     Defendant does not identify how many FD-302 forms have not been already produced.  Nor does Defendant identified how many pages of communications must be reviewed.  Defendant merely states that the entire investigative file contains over 10,000 pages.  It does not even identify exactly what records are contained in the file.  In fact, it is entirely possible that the records Plaintiff seeks are not part of the investigative file (Defendant has not searched the file to determine if responsive records are contained in it) or that they consist of less of 500 pages.

4.     Importantly, Defendant does not even assert that it cannot identify or that it would be too burdensome for it to identify how many FD-302 forms have not been already produced or how many pages of communications must be reviewed.  In fact, Defendant's statement is almost entirely void of discussion about the specific records at issue in this lawsuit.

2

5.      Defendant asserts that the entire investigative file contains over 10,000 pages.  At a rate of 500/month, Defendant will finish processing the file in 20 months or by September 2018.  Regardless of the fact that Plaintiff did not ask for the entire investigative file, a processing rate of 500 pages per month is simply unacceptable.  *See* Transcript of July 10, 2015 Status Hearing, *Attkisson v. U.S. Department of Health and Human Services*, Case No. 14-cv-1348 (TSC).

6.      Plaintiff proposes that Defendant search for records responsive to Plaintiff's FOIA request and identify within 30 days the number of pages potentially responsive to Plaintiff's FOIA request.  At that time, the parties can meet and confer about a processing and production schedule.

7.      Plaintiff believes a status conference may be helpful to the resolution of this dispute.

## DEFENDANT'S STATEMENT

On October 21, 2016, the FBI sent Plaintiff a final determination letter explaining, among other things, that no responsive records were found concerning Request No. 1354040-000.  Counsel for Plaintiff has indicated that this final determination will not be appealed.

On December 2, 2016, the FBI sent Plaintiff a letter stating that Request No. 1354023-000 was mistakenly closed and has been reopened.  The letter also indicated that the FBI had made at least three releases of responsive records on the FBI's electronic FOIA library ("The Vault") (on September 2, September 23, and October 17).  The FBI made clear that, while numerous 302s have been publicly disclosed on The Vault, it will continue to process the investigative file and make additional releases of responsive records.  Moreover, only Request Nos. 1354023-000 and 1354029-000 remain at issue in this case.

3

The FBI has received hundreds of FOIA requests for records related to/from the Hillary Clinton investigation, including Plaintiff's requests.  The FBI is committed to processing the entire Clinton investigative file and making monthly interim releases of all non-exempt responsive records, or non-exempt portions of responsive records, on The Vault.  In fact, the FBI already started to process the file and make periodic releases.  The FBI is currently reviewing at least 500 pages of investigative file records per month and will continue posting non-exempt records to The Vault on a monthly basis.  Given the complexity of this case, the FBI's stated commitment to process the entire file, the workload demands, and the length of the investigative file (*i.e.*, over 10,000 pages), the proposed processing schedule is both reasonable and consistent with the FBI's policy for medium- and large-queue requests.  The U.S. Department of Justice respectfully requests that the Court approve a processing schedule of 500 pages per month with periodic releases every 30 days until processing is completed.

Since January 2010, the FBI's Record/Information Dissemination Section ("RIDS") instituted a policy of processing 500 pages per month for medium- and large-queue requests.  *See* Corrected Declaration of David Hardy (Hardy Decl.) ¶ 8, *Colbert v. FBI*, Civ. A. No. 1:16-cv-01790 (RDM) (D.D.C.), ECF No. 15.  This policy was instituted in response to FOIA regulations by the Department of Justice regarding the prompt disclosure of responsive records.  *See* 28 C.F.R. § 16.5(b).  This Court acknowledged the rationale behind the FBI's compact disc ("CD") interim release policy of 500 pages per month in *National Security Counselors, et al. v. Department of Justice*, 80 F. Supp. 3d 40, 48-49 (D.D.C. 2015) (Chutkan, J.).

The rationale for this policy is four-fold.  First, the policy reflects the FBI's efforts to develop multitrack processes to respond to more requests and ensure fairness to all requesters.

*See id.* at 48.[2]  By labeling each request as "simple" or "complex" and placing them on one of four tracks (*i.e.*, small, medium, large, and extra-large tracks), the FBI is able to administer the requests in an efficient and more equitable manner based on the time and work required to handle each request.  *See* Hardy Decl. ¶ 8(a).  Second, the policy promotes efficiencies for both RIDS and requesters by ensuring that materials are reviewed in 500-page increments.  By assigning interim releases to multiple processors, this policy ensures that more reviewing officials, subject matter experts, and agencies with equities on the records at issue can be consulted and more pages can be processed, reviewed, and released to more requesters.  *See Nat'l Security Counselors*, 80 F. Supp. 3d at 48; *see also* Hardy Decl. ¶ 8(b).

Third, the policy allows the FBI to undergo proper multi-step information security review.  Given the security requirements at issue in this multi-step review process, the FBI has adopted the 500-page size to avoid additional security protocol burdens, delays in processing time, and disruptions in the FBI's steady release flow.  *Nat'l Security Counselors*, 80 F. Supp. 3d at 48; Hardy Decl. ¶ 8(c).  Fourth, the policy "promotes prompt access to nonexempt information on a recurring basis as it is processed, rather than through a single deferred productions, and offers requesters a favorable cost structure."  *Nat'l Security Counselors*, 80 F. Supp. 3d at 48.

All of these factors support the FBI's adoption of a 500-page per month workflow policy, one that is based on sound FOIA business practice and guarantees a steady flow of information to the public.  In addition to these factors, the high volume and complexity of requests in fiscal

---

[2] The three-track system utilized to assign and process new FOIA requests that was addressed in *National Security Counselors* was replaced on July 6, 2015 by a four-track system.  *See* 80 F. Supp. at 48-49; *see also* Hardy Decl. ¶ 8(a) n.2.  Nonetheless, the description and rationale described therein applies with equal force in the instant case.

year 2016 ("FY 2016"), the FBI's litigation demands, and the FBI's limited resources strongly support Defendant's proposed processing schedule.

In FY 2016, RIDS received a total of 22,222 FOIA and Privacy Act requests, that is, an average of approximately 1,852 requests per month.  *See* Hardy Decl. ¶ 12.  In fact, the FBI still has to process approximately 5.19 million pages.  *See id.*  These requests have become significantly more complex and demanding in recent years as they often implicate more responsive pages and require consultation or a direct response from other agencies with equities in the processing of responsive records.  *See id.*

In addition to the high volume and complexity of FOIA/Privacy Act requests, RIDS currently has approximately 223 pending litigations, thereby experiencing an increase of 41% in FOIA litigation in FY 2016.  *See id.* ¶ 16.  Moreover, the FBI is currently processing 500 pages per month in similarly complex cases involving large-queue FOIA requests.  *See id.*

With respect to the FBI's investigation of Hillary Clinton's server, the FBI has opted to release all non-exempt information from the investigative file to The Vault.  The complexity and sensitivity of FOIA requests concerning the Clinton investigative file, (*i.e.*, which requires iterative reviews by the Classification Unit, FOIA processors, one or more agencies, and the multi-step information security review), the workload demands on RIDS, and its limited resources to handle both litigation and administrative FOIA/Privacy Act requests strongly support the FBI's proposed processing schedule of 500 pages per month.

From a fairness and workflow management standpoint, Plaintiff's request should not be prioritized over the hundreds of other requesters seeking records from the Clinton investigative file who may have chosen not to file a lawsuit against Defendant because they either lack the resources to do so or because they are satisfied with the FBI's ongoing disclosures and

commitment to place all non-exempt information from the investigative file on The Vault. Plaintiff's plan would monopolize RIDS's finite resources at the expense of requesters in smaller processing queues and undermine the FBI's efforts to promote both agency and requester efficiencies. Moreover, Plaintiff did not seek expedition of its requests and has failed to identify any exigencies to justify the prioritization of its requests over all others.

Plaintiff's proposed plan to search for specific records will also disrupt the FBI's steady release flow and good faith, transparency efforts to provide the public *writ large* with information about the investigation on a rolling basis. Although Plaintiff claims to want only certain subsets of the investigative file, processing of the entire file in sequence has already begun. Rather than processing the entire file in sequential order, Plaintiff would rather have RIDS go through the entire file, page-by-page, to identify and pull out FD-302 forms and "communications" for processing. Being required to follow this procedure for every type of document in the file at the expense of other requesters is unreasonable, particularly since the FBI has communicated its intention of releasing to the public all non-exempt information in the file. Pulling certain responsive records for processing—such as the FD-302 forms at issue in Request No. 1354023-000 and the "communications" referenced in Request No. 1354029-000—would be chaotic and inefficient as it would disrupt the FBI's work-flow policy of providing more information to more requesters and litigants across all processing queues.

Earlier last month, on December 5, 2016, Plaintiff filed another FOIA lawsuit against Defendant requesting other records in the investigative file. *See Judicial Watch, Inc. v. U.S. Department of Justice*, Civ. No. 16-2369-RDM (D.D.C.). The filing of this lawsuit illustrates precisely the problem with Plaintiff's position: Namely, pulling out specific responsive records for priority processing in lieu of processing the entire file in 500-page increments will result in a

chaotic process that disrupts the work flow, unduly burdens RIDS's efforts and limited resources, and risks missing records.

In light of the above, Defendant anticipates that the search and production at issue will entail the collection and processing of a voluminous amount of material.  The FBI has not yet determined precisely how many responsive records remain to be processed or the total number of productions that ultimately will need to occur.  Moreover, Defendant respectfully submits that it is premature at this time to state whether a *Vaughn* index or dispositive motions will need to be filed, or to propose a schedule for dispositive motions.  Although Defendant does not believe that a motion for an *Open America* stay is likely in this case, it reserves the right to file such a motion.  Finally, Defendant proposes filing an additional status report on or before March 8, 2017, to update the Court about the rolling productions in this case, and respectfully asks the Court to approve its proposed processing schedule of 500 pages per month.

Dated:  January 6, 2017

/s/ Michael Bekesha
Michael Bekesha
DC Bar No. 995749
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC 20024
(202) 646-5172

*Counsel for Plaintiff*

Respectfully submitted,

BENJAMIN C. MIZER
Principal Deputy Assistant Attorney General

CHANNING D. PHILLIPS
U.S. Attorney for the District of Columbia

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Cesar A. Lopez-Morales*
CESAR A. LOPEZ-MORALES
Trial Attorney, MA Bar No. 690545
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 6143
Washington, D.C. 20530
(202) 305-8550 (office); (202) 616-8460 (fax)
cesar.a.lopez-morales@usdoj.gov

*Counsel for Defendant*