**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

|  |  |  |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16-cv-2046 (TSC) |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

**MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

ARGUMENT ........................................................................................................................ 3

I.     THERE IS NO NEED TO RESOLVE DISPUTES ABOUT THE CONTESTED
WITHHOLDINGS BECAUSE THOSE RECORDS ARE SUBJECT TO OTHER
EXEMPTIONS THAT ARE NOT IN DISPUTE ................................................................ 4

II.    THE FBI PROPERLY WITHHELD INFORMATION UNDER EXEMPTIONS 6
AND 7(C) ........................................................................................................................... 7

III.   THE FBI REASONABLY DETERMINED THAT NO NON-EXEMPT
INFORMATION WAS REASONABLY SEGREGABLE FROM THE
CONTESTED RECORDS WITHHELD IN FULL ........................................................... 12

IV.   THE FBI COMPLIED WITH THE FORESEEABLE HARM STANDARD IN
THE FOIA IMPROVEMENT ACT OF 2016 ................................................................... 13

CONCLUSION .................................................................................................................... 15

i

## TABLE OF AUTHORITIES

**CASES**

*Am. Ctr. for Law & Just. v. U.S. Dep't of Just.*,
  325 F. Supp. 3d 162 (D.D.C. 2018) ..................................................................... 5

*August v. FBI*,
  328 F.3d 697 (D.C. Cir. 2003)............................................................................. 3

*Ball v. USMS,*
  No. 19-1230, 2021 WL 4860590 (D.D.C. Oct. 19, 2021) ........................................ 7

*Bartko v. DOJ*,
  79 F. Supp. 3d 167 (D.D.C. 2015), *aff'd*, 898 F.3d 51 (D.C. Cir. 2018) ..................... 8

*Blackwell v. FBI*,
  646 F.3d 37 (D.C. Cir. 2011)............................................................................ 7, 9

*\*Brown v. FBI*,
  143 F.4th 481 (D.C. Cir. 2025) ................................................................... 8, 11, 13

*\*Brown v. FBI*,
  No. 21-cv-1639, 2023 WL 5333210 (D.D.C. Aug. 18, 2023),
  *aff'd*, 143 F.4th 481 (D.C. Cir. 2025) ................................................................. 9, 10

*CIA v. Sims*,
  471 U.S. 159 (1985).......................................................................................... 6

*DOJ v. Reps. Comm. for Freedom of Press*,
  489 U.S. 749 (1989).......................................................................................... 8, 9

*Farahi v. FBI*,
  153 F.4th 1283 (D.C. Cir. 2025) ......................................................................... 8

*Groenendal v. Exec. Off. for U.S. Att'ys*,
  No. 20-cv-1030, 2024 WL 1299333 (D.D.C. Mar. 27, 2024),
  *aff'd*, 2024 WL 4455868 (D.C. Cir. Oct. 8, 2024).................................................. 13

*John Doe Agency v. John Doe Corp.*,
  493 U.S. 146 (1989)......................................................................................... 3, 4

*Juarez v. DOJ*,
  518 F.3d 54 (D.C. Cir. 2008).............................................................................. 12

*\*Kowal v. DOJ*,
  107 F.4th 1018 (D.C. Cir. 2024) .................................................................. 8, 9, 11, 12

*Larson v. Dep't of State*,
565 F.3d 857 (D.C. Cir. 2009)................................................................................. 5

*Leopold v. CIA*,
106 F. Supp. 3d 51 (D.D.C. 2015) .......................................................................... 4

*Matthews v. FBI*,
No. 15-cv-569, 2019 WL 1440161 (D.D.C. Mar. 31, 2019)....................................... 6

*Mead Data Cent., Inc. v. Dep't of the Air Force*,
566 F.2d 242 (D.C. Cir. 1977)............................................................................... 12

*Moore v. Bush*,
601 F. Supp. 2d 6 (D.D.C. 2009) .......................................................................... 10

*Nat'l Magazine, Wash. Bureau v. Customs Serv.*,
71 F.3d 885 (D.C. Cir. 1995)................................................................................. 10

*Parker v. ICE*,
238 F. Supp. 3d 89 (D.D.C. 2017) .......................................................................... 7

*Pratt v. Webster*,
673 F.2d 408 (D.C. Cir. 1982)................................................................................. 9

*Project on Gov't Oversight, Inc. v. U.S. Dep't of Homeland Sec.*,
657 F. Supp. 3d 50 (D.D.C. 2023) .......................................................................... 5

*Rojas-Vega v. ICE*,
302 F. Supp. 3d 300 (D.D.C. 2018) ........................................................................ 7

*Roth v. DOJ*,
642 F.3d 1161 (D.C. Cir. 2011)............................................................................... 8

*SafeCard Servs., Inc v. SEC*,
926 F.2d 1197 (D.C. Cir. 1991).........................................................................4, 11

*Schaerr v. DOJ*,
69 F.4th 924 (D.C. Cir. 2023) ................................................................................. 4

*Schoenman v. FBI*,
763 F. Supp. 2d 173 (D.D.C. 2011) ...................................................................... 10

*Schrecker v. DOJ*,
349 F.3d 657 (D.C. Cir. 2003)............................................................................... 10

*Summers v. DOJ*,
517 F. Supp. 2d 231 (D.D.C. 2007) .......................................................................11

*Sussman v. U.S. Marshals Serv.*,
   494 F.3d 1106 (D.C. Cir. 2007)........................................................................................ 12

*U.S. Dep't of Def. v. Federal Labor Relations Auth.*,
   510 U.S. 487 (1994)............................................................................................................ 9

*Wolf v. CIA*,
   473 F.3d 370 (D.C. Cir. 2007)............................................................................................ 4

**STATUTES**

5 U.S.C. § 552.................................................................................................................. *passim*

**RULES**

Federal Rule of Criminal Procedure 6 ............................................................................... 6

**INTRODUCTION**

This long-running Freedom of Information Act ("FOIA") case has ultimately drawn to a relatively straightforward conclusion.  In 2016, Judicial Watch submitted a request to the Federal Bureau of Investigation ("FBI") seeking records related to an investigation into former Secretary of State Hillary Clinton's use of a private email server and other information about former President Clinton.  After the FBI completed processing the request, the parties conferred about whether there remained any disputes about the FBI's responses.  The only dispute that remains is the FBI's withholding in full of 169 pages to the extent those pages cited three specific exemptions to FOIA's disclosure provisions:   Exemption 5, 6, and 7(C).

As the FBI will explain, however, there is no need for this Court to resolve the propriety of any of those three exemptions.  The FBI also cited a combination of three other exemptions to withhold each of the 169 pages.  Judicial Watch contests none of those other exemptions.  On a subsequent review to determine whether any information not protected by those three uncontested exemptions could be segregated and released from these pages, the FBI determined that none could.  Put another way, even if the FBI lifted its reliance on Exemptions 5, 6, and 7(C), no additional information would be released.

The FBI's withholdings based on the disputed exemptions are fully justified regardless.  The FBI did not rely on Exemption 5 to withhold any portion of the pages withheld in full.  All that remains, then, is the FBI's reliance on Exemption 6 and 7(C), both of which exempt from disclosure information that would constitute an unwarranted invasion of personal privacy.  The FBI applied those exemptions to withhold the names and other identifying information of FBI agents and other federal governmental personnel, third parties who provided information to the FBI or who were merely mentioned in the FBI's files, and other third parties who were of investigative interest.  As the accompanying Declaration of Amie Marie Napier thoroughly

explains, all of these records were compiled for law enforcement purposes, making them eligible for the more deferential Exemption 7(C) standard applied to law enforcement records. For each withholding, the FBI determined that disclosure of the withheld information "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The FBI also complied with its obligation to demonstrate a reasonable foreseeability that a protected harm would follow disclosure. And the FBI reasonably determined that no additional non-exempt information could be segregated and released. The FBI's Exemption 6 and 7(C) withholdings were reasonable and correct. This Court should grant summary judgment to the Defendant.

### FACTUAL BACKGROUND

This suit involves a FOIA request Judicial Watch submitted to the FBI on July 7, 2016. Judicial Watch does not dispute the FBI's search, the FBI's application of FOIA exemptions to records that have been withheld in part, or several of the FOIA exemptions the FBI cited to withhold records in full. *See* Joint Status Report at 1, ECF No. 49 (explaining that there "remains a dispute regarding 169 pages of records Defendant withheld in full asserting Exemptions 5, 6, and 7C").

Judicial Watch's request sought three categories of records: (1) "FD-302 forms prepared pursuant to the [FBI's] investigation of former Secretary of State Hillary Clinton's use of a private e-mail server during her tenure"[1]; (2) "records of communication between any agent, employee, or representative of the [FBI] regarding, concerning, or related to the aforementioned investigation"; and (3) "records regarding, concerning, or related to the meeting between Attorney General Lynch and former President Bill Clinton on June 27, 2016." Decl. of Amie Marie Napier

---

[1] "FD-302s are internal FBI forms in which evidence is often documented, usually the results of FBI interviews." Napier Decl. Ex. N at 3

¶ 6 & Ex. A ("Napier Decl."). The FBI conducted a search and completed its final production of responsive records on April 16, 2024. Joint Status Report at 1, ECF No. 42; Napier Decl. ¶ 19.

The FBI withheld 169 responsive pages from its production in full citing FOIA Exemptions 6 and 7(C) to protect against disclosure of information that would invade personal privacy, 5 U.S.C. § 552(b)(6), (7)(C). Napier Decl. ¶ 4 & Ex. N. Those pages all reflected FD-302s, electronic communications, or e-mails within the FBI's records. See id., Ex. N at 3. The FBI cited Exemptions 6 and 7(C) over only the portions of those pages that contained the names and other identifying information of government personnel or other third parties. See Napier Decl. ¶¶ 4, 52–66. Each of those 169 pages also contained information protected from disclosure by other FOIA exemptions, including Exemption 1, which protects classified information, 5 U.S.C. § 552(b)(1), Exemption 3, which protects information specifically exempted from disclosure by another statute, id. § 552(b)(3), and Exemption 7(E), which protects law enforcement techniques and procedures, id. § 552(b)(7)(e). See generally Napier Decl. Ex. N. The FBI has not withheld any portion of those 169 pages under Exemption 5 to protect information subject to a privilege. See id. ¶ 4 n.1.

The FBI also conducted a review of the 169 contested pages of withholdings and determined that no non-exempt information could be segregated and released. Id. ¶ 78.

## ARGUMENT

FOIA reflects a "general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989) (citations omitted). The FOIA statute's "nine enumerated exemptions are designed to protect those 'legitimate governmental and private interests' that might be 'harmed by release of certain types of information.'" *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (quoting *John Doe Agency*, 493 U.S. at 152). As such, the exemptions must be given "meaningful reach and application" to strike the appropriate balance "between the right of the public to know

and the need of the Government to keep information in confidence." *John Doe Agency*, 493 U.S. at 152 (citations omitted).

"FOIA cases typically and appropriately are decided on motions for summary judgment." *Leopold v. CIA*, 106 F. Supp. 3d 51, 55 (D.D.C. 2015). A court reviews an agency's response to a FOIA request *de novo*. *See* 5 U.S.C. § 552(a)(4)(B). Courts afford "substantial weight to an agency's affidavit," and "must grant summary judgment for an agency if its affidavit: (1) describes the justifications for nondisclosure with 'reasonably specific detail'; and (2) is not substantially called into question by contrary record evidence or evidence of agency bad faith." *Schaerr v. DOJ*, 69 F.4th 924, 929 (D.C. Cir. 2023) (quoting *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007)). This is not a high bar. "An agency's justification is sufficient if it is logical or plausible." *Id.* (citation omitted); *see also SafeCard Servs., Inc v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (agencies' FOIA declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims.'" (citation omitted)).

## I.   THERE IS NO NEED TO RESOLVE DISPUTES ABOUT THE CONTESTED WITHHOLDINGS BECAUSE THOSE RECORDS ARE SUBJECT TO OTHER EXEMPTIONS THAT ARE NOT IN DISPUTE

This Court need not wade into the specifics of any dispute between the parties over withholdings based on Exemptions 5, 6, and 7(C). That is so because the FBI also relied on other exemptions to withhold each of the contested 169 withheld-in-full pages. Judicial Watch has not disputed the FBI's application of those other exemptions. As the parties' most recent Joint Status Report made clear, Judicial Watch disputes the "169 pages of records Defendant withheld in full asserting Exemptions 5, 6, and 7C." Joint Status Report at 1, ECF No. 49. The FBI, however, withheld each of those pages in full based on a combination of Exemptions 1, 3, and 7(E). Judicial Watch has not challenged withholdings based on those exemptions, and so the Court may grant summary judgment for the Defendant without reaching the disputed exemptions.

4

By limiting the scope of the dispute to the FBI's withholdings based on Exemptions 5, 6, and 7(C) within records withheld in full, Judicial Watch waived its right to challenge the FBI's search or other bases for withholding.[2]  *See, e.g.*, *Project on Gov't Oversight, Inc. v. U.S. Dep't of Homeland Sec.*, 657 F. Supp. 3d 50, 59 (D.D.C. 2023) ("This Court has held on multiple occasions that 'where sophisticated parties to a FOIA case have agreed to narrow the issues in a written status report, they generally may be held to their agreement under traditional waiver principles.'") (quoting *Am. Ctr. for Law & Just. v. U.S. Dep't of Just.*, 325 F. Supp. 3d 162, 168 (D.D.C. 2018)).

Notwithstanding that waiver, the FBI's withholdings based on Exemptions 1, 3, and 7(E) were also proper for the reasons stated in the Napier Declaration.  *See* Napier Decl. ¶¶ 25–50, 67–76.  Exemption 1 permits an agency to withhold information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and that is "in fact properly classified pursuant to such Executive order."  5 U.S.C. § 552(b)(1).  The FBI applied Exemption 1 here to withhold "classified information concerning detailed intelligence activity information gathered . . . on a specific individual or organization of national security interest" and "information related to foreign relations or foreign activities of the United States."  Napier Decl. ¶¶ 33–39.  That information included classified file numbers, the targets of foreign counterintelligence, and confidential sources, all of which were classified at the secret level.  *Id.*  The FBI properly withheld this information.  *See, e.g.*, *Larson v. Dep't of State*, 565 F.3d 857, 863 (D.C. Cir. 2009).

Exemption 3 authorizes an agency to withhold information "specifically exempted from disclosure by statute."  5 U.S.C. § 552(b)(3).  Here, the FBI withheld (1) federal grand jury

---

[2]    As explained above, the FBI is not citing Exemption 5 to withhold any portion of the 169 pages.

information prohibited from disclosure by Federal Rule of Criminal Procedure 6(e), Napier Decl. ¶¶ 41–46; and (2) information that would reveal intelligence sources and methods as prohibited by the National Security Act of 1947, Napier Decl. ¶¶ 47–50.  Both categories of information are eligible for withholding under Exemption 3, and the FBI properly applied that exemption here. *See, e.g.*, *CIA v. Sims*, 471 U.S. 159, 175 (1985) (affirming withholding of intelligence sources); *Matthews v. FBI*, No. 15-cv-569, 2019 WL 1440161 (D.D.C. Mar. 31, 2019) (concluding that the FBI properly applied Exemption 3 to withhold Federal Grand Jury information).

Exemption 7(E) permits agencies to withhold information compiled for law enforcement purposes to the extent release "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).[3]  The FBI applied Exemption 7(E), in tandem with Exemptions 1 and 3, to withhold sensitive investigative file numbers, information that would disclose the identity of methods used to collect and analyze information in FBI investigations, and sensitive investigative techniques used to conduct national security investigations.  Napier Decl. ¶¶ 67–76.  As Ms. Napier explains, release of the investigative file numbers "would allow determined criminals and foreign adversaries to obtain an exceptional understanding of the body of investigative intelligence available to the FBI" and enable those groups "to predict FBI investigations and structure their behavior to avoid detection and disruption by FBI investigators, enabling them to circumvent the law."  *Id.* ¶ 73.  Disclosure of the FBI's methodologies for collection and analysis of information "would enable criminals to educate themselves about [those] techniques" and "take

---

[3]     For the reasons explained *infra* at Part II, each of the 169 pages of contested records were compiled for law enforcement purposes and therefore meet the threshold requirement to be eligible for protection under Exemption 7.

countermeasures to circumvent [their] effectiveness." *Id.* ¶ 75.  Similarly, disclosure of the FBI's

sensitive investigative techniques "would enable criminals and foreign adversaries targeted by

these techniques to predict and circumvent their use by the FBI." *Id.* ¶ 76. That type of information

falls within the heartland of Exemption 7(E).  *See Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir.

2011) (affirming FBI withholding of "methods of data collection, organization and presentation"

under Exemption 7(E)); *Ball v. USMS*, No. 19-1230, 2021 WL 4860590, at *7 (D.D.C. Oct. 19,

2021) (affirming the withholding of a plaintiff's Federal Identification number and ICE's internal

case number under FOIA Exemption 7(E)); *Rojas-Vega v. ICE*, 302 F. Supp. 3d 300, 310 (D.D.C.

2018) (affirming the withholding of  "case numbers, . . . subject identification numbers, case

identification numbers, and internal identifying codes" under FOIA Exemption 7(E)); *Parker v.

ICE*, 238 F. Supp. 3d 89, 100 (D.D.C. 2017) (approving withholding of "identification numbers

[and] internal agency codes").

In sum, the FBI's withholdings-in-full were all justified by proper applications of FOIA

exemptions that Judicial Watch does not challenge.  Whether by application of waiver rules or on

the merits, this Court should grant summary judgment to the Defendant.

## II.    THE FBI PROPERLY WITHHELD INFORMATION UNDER EXEMPTIONS 6 AND 7(C)

Should the Court reach the disputed exemptions, the FBI's withholdings were correct

applications of Exemption 6 and 7(C).  Both of those exemptions protect the privacy of individuals

from unwarranted invasion.  Exemption 6 allows the withholding of information about individuals

in "personnel and medical files and similar files" when the disclosure of such information "would

constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  Exemption

7(C) is the law enforcement counterpart to Exemption 6 and protects from disclosure "law

enforcement records or information" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C).

Although Exemptions 6 and 7(C) both require agencies and reviewing courts to undertake the same weighing of interests, the balance under Exemption 7(C) "tilts more strongly toward nondisclosure" because its "privacy language is broader than the comparable language in Exemption 6." *Bartko v. DOJ*, 79 F. Supp. 3d 167, 172 (D.D.C. 2015) (quoting *DOJ v. Reps. Comm. for Freedom of Press*, 489 U.S. 749, 756 (1989)), *aff'd*, 898 F.3d 51 (D.C. Cir. 2018); *compare* 5 U.S.C. § 552(b)(6) (protecting from disclosure information which "*would* constitute a *clearly unwarranted* invasion of personal privacy" (emphasis added)), *with id.* § 552(b)(7)(C) (protecting from disclosure information that "*could reasonably be expected to* constitute an unwarranted invasion of personal privacy" (emphasis added)). Assuming the records at issue are eligible for both exemptions, "the information protected by Exemption 6 is a subset of that protected by Exemption 7(C)" and the Court "need only analyze the latter." *Brown v. FBI*, 143 F.4th 481, 486 n.3 (D.C. Cir. 2025) (quoting *Kowal v. DOJ*, 107 F.4th 1018, 1027 (D.C. Cir. 2024)); *Roth v. DOJ*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider Exemption 6 separately [where] all information that would fall within the scope of Exemption 6 would also be immune from disclosure under Exemption 7(C)").

The 169 withheld-in-full pages Judicial Watch contests here were all "compiled for law enforcement purposes" and thus eligible for protection under Exemption 7(C). 5 U.S.C. § 552(b)(7). To establish that records or information were compiled for law enforcement purposes, an agency's declaration "must establish a rational nexus between the investigation and one of the agency's law enforcement duties, as well as a connection between an individual or incident and a possible security risk or violation of federal law." *Farahi v. FBI*, 153 F.4th 1283, 1286 (D.C. Cir.

8

2025) (cleaned up).   Courts "apply a more deferential attitude toward the claims of 'law enforcement purpose' made by a criminal law enforcement agency" like the FBI.  *Kowal*, 107 F.4th at 1030 (quoting *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)).  "The FBI is, by definition, a criminal investigatory and regulatory law enforcement agency within the Department of Justice." *Brown v. FBI*, No. 21-cv-1639, 2023 WL 5333210, at *11 (D.D.C. Aug. 18, 2023), *aff'd*, 143 F.4th 481 (D.C. Cir. 2025).  Using its investigative authority, the FBI compiled the withheld responsive records in furtherance of its investigation into the storage and transmission of classified information on former Secretary of State Hillary Clinton's unclassified private servers.  Napier Decl. ¶ 51.  The FBI's assertion is supported by the nature of Judicial Watch's original request, which sought records "related to" the "investigation."  *Id.* ¶ 6; Compl. ¶ 5.  Records responsive to that request are "quite obviously related to the FBI's law enforcement duties" and "easily qualify as 'records or information compiled for law enforcement purposes.'"  *Blackwell*, 646 F.3d at 40 (quoting 5 U.S.C. § 552(b)(7)).

Where a record meets the threshold requirements of Exemption 7(C), an agency must then balance the individual's right to privacy against the public's interest in disclosure.  *See U.S. Dep't of Def. v. Federal Labor Relations Auth.*, 510 U.S. 487, 496 n.6 (1994).  In reviewing applications of Exemption 7(C), courts consider "the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'"  *Id.* at 495 (quoting *DOJ v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 775 (1989)) (emphasis omitted).

Here that balancing tips strongly in favor of non-disclosure.  The FBI withheld names and identifying information such as "social security numbers, residence addresses, telephone numbers, personal email addresses[,] financial/banking information, and professional titles" of several

9

categories of individuals that appeared within the withheld-in-full records. Napier Decl. ¶ 54 n.17. Those individuals are identified in the withheld pages because they were either (1) FBI special agents, other FBI professional staff, and other non-FBI federal government personnel who provided information; (2) third-party individuals who provided information to the FBI during the investigation; (3) merely mentioned in the withheld pages; (4) of investigative interest to the FBI; or (5) employees of commercial institutions that provided assistance to the FBI during its investigation. Napier Decl. ¶¶ 57–66. Courts in this Circuit routinely uphold agency decisions to withhold identifying information about these categories of individuals. *See Brown*, 2023 WL 5333210, at *12 (upholding FBI's invocation of Exemption 7(C) to withhold personal information of these same categories of individuals); *Schoenman v. FBI*, 763 F. Supp. 2d 173, 198 (D.D.C. 2011); *see also Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Nat'l Magazine, Wash. Bureau v. Customs Serv.*, 71 F.3d 885, 894, 896 (D.C. Cir. 1995) (acknowledging the "obvious privacy interest" cognizable under Exemption 7(C) and that it extends "to third parties who may be mentioned in investigatory files"); *Moore v. Bush*, 601 F. Supp. 2d 6, 14 (D.D.C. 2009) (denying the release of identifying information of FBI personnel because it could subject the Agent and the employee to harassment).

The Napier Declaration explains why releasing the withheld personal information would cause harm. As Ms. Napier demonstrates, releasing the names of FBI Special Agents and other government personnel who worked on the investigation could "trigger hostility toward" those individuals or expose them to "harassing inquiries." Napier Decl. ¶¶ 58–59; *see also id.* ¶ 65 (asserting the same risks should the identities of personnel from non-FBI federal agencies become public). The same is true for the withheld identifying information of third-parties who provided information to the FBI, who were merely mentioned in the records, or who were employees of

10

commercial institutions that provided assistance to the FBI during its investigation.  Release of

that information could cause those individuals to "be targeted for retaliation" or lead to "economic

detriment" for their willing participation in the investigation.  *Id.* ¶¶ 61, 63; *see Brown*, 143 F.4th

at 487 (accepting similar declaration).  The FBI also reasonably concluded that the disclosure of

identifying information of persons of investigative interest "could subject" those individuals "to

harassment or embarrassment, as well as undue public attention" or other "professional and social

repercussions, due to resulting negative stigmas" from being associated with a highly public FBI

investigation.  Napier Decl. ¶ 64.  The FBI was therefore correct in concluding that release of

personally identifying information of the individuals in each of the categories of information the

FBI withheld would have a substantial effect on those individuals' privacy.

On the other side of the ledger, the FBI found that no public interest would be served by

disclosing the withheld identifying information.  Napier Decl. ¶¶ 58, 59, 62–66.  "There is no

public interest in disclosure unless there is compelling evidence that the agency denying the FOIA

request is engaged in illegal activity, and access to the requested information is necessary in order

to confirm or refute that evidence."  *Kowal*, 107 F.4th at 1031 (cleaned up); *see also SafeCard*

*Servs., Inc.*, 926 F.2d at 1205–06.  Judicial Watch has not and cannot make that showing here.  *See*

*Summers v. DOJ*, 517 F. Supp. 2d 231, 235 (D.D.C. 2007) ("Releasing the names of these agents

would not shed light on the agency's performance of its statutory duties, which is the recognized

public interest under FOIA.").  The FBI, moreover, took a targeted approach and assessed the

privacy interests of specific individuals on an individualized basis.  *See* Napier Decl. ¶¶ 54–55.  In

particular, the FBI does not withhold the "names of high-ranking FBI officials" or "individuals in

[other] public positions, as they have diminished privacy rights while acting in their official

capacity."  *Id.* ¶ 55.  "Where there is no identifiable public interest, the privacy interest protected

by Exemption 7(C) prevails because something, even a modest privacy interest, outweighs nothing every time." *Kowal*, 107 F.4th at 1031 (cleaned up).

Accordingly, DOJ properly applied Exemptions 6 and 7(C) to withhold identifying information from the 169 pages Judicial Watch contests.

### III.    THE FBI REASONABLY DETERMINED THAT NO NON-EXEMPT INFORMATION WAS REASONABLY SEGREGABLE FROM THE CONTESTED RECORDS WITHHELD IN FULL

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). Accordingly, "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). And a court "may rely on government affidavits that show with reasonable specificity why documents withheld pursuant to a valid exemption cannot be further segregated." *Juarez v. DOJ*, 518 F.3d 54, 61 (D.C. Cir. 2008).

Here, the Napier Declaration establishes that no additional non-exempt information could be segregated and released from the contested records withheld in full. As that declaration explains, all of the information withheld based on Exemptions 6 and 7(C) in the 169 challenged pages "was either fully covered by non-challenged FOIA Exemptions 1 and/or 3," which Judicial Watch has not contested, or the FBI "determined that any non-exempt information on these pages was so intertwined with exempt material [that] no information could be reasonably segregated for release." Napier Decl. ¶ 78. Summary judgment should, therefore, be granted for DOJ. *See Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007) ("Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material." (citation omitted)).

IV.     **THE FBI COMPLIED WITH THE FORESEEABLE HARM STANDARD IN THE FOIA IMPROVEMENT ACT OF 2016**

The FOIA Improvement Act of 2016 requires that agencies "withhold information . . . only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)."  5 U.S.C. § 552(a)(8)(A)(i)(I).  The FBI easily meets that standard here.

The Napier Declaration establishes that the FBI reasonably foresees harm in the release of personally identifying information it withheld under Exemptions 6 and 7(C).  *See* Napier Decl. ¶ 77.  As Ms. Napier explains, releasing identifying information about federal government personnel who worked on or provided information to the investigation could subject those persons to harassment and threats of violence.  Napier Decl. ¶¶ 58–63, 65.  Similarly, release of identifying information of third parties who provided information to the FBI during its investigation, including the employees of commercial third parties, or who were merely mentioned in the FBI's records could subject those third parties to "undue public attention and/or unwanted inquiries for information related to their assistance."  *Id.* ¶¶ 61, 60, 66.  Release of the personal information of persons of investigative interest, moreover, "could result in professional and social repercussions[] due to resulting negative stigmas."  *Id.* ¶ 64.  That is sufficient to show foreseeable harm.  *See, e.g.*, *Brown*, 143 F.4th at 487 (holding that similar explanations were sufficient to "identif[y] reasonably foreseeable harms linked to the disclosure of the personally identifiable information the FBI withheld"); *Groenendal v. Exec. Off. for U.S. Att'ys*, No. 20-cv-1030, 2024 WL 1299333, at *11 (D.D.C. Mar. 27, 2024), *aff'd*, 2024 WL 4455868 (D.C. Cir. Oct. 8, 2024).

Although Judicial Watch waived any challenge to the FBI's withholdings based on Exemptions 1, 3, and 7(E), the FBI's applications of those withholdings also meet its obligations under the FOIA Improvement Act.  Initially, the FOIA Improvement Act's foreseeable harm

13

requirement does not apply to withholdings based on Exemption 3.  5 U.S.C. § 552(a)(8)(B).  All but one of the 169 pages cited Exemption 3 as a basis for withholding in full.  *See generally* Napier Decl. Ex. N.  The FBI, therefore, was not required to conclude that foreseeable harm would result from the release of all but one of those pages.  *See id.* at 16 (identifying document at Bates number HRC-8930 as the only contested page over which the FBI did not assert Exemption 3).  The FBI withheld portions of the page under Exemptions 6 and 7(C) because it contained the identifying information of persons of investigative interest and merely mentioned other third parties, and withheld the page in full under Exemption 7(E) to protect information that would reveal the methodologies the FBI uses to collect and analyze information related to its investigations.  *Id.* (citing exemption code 7(E)-4); *see also* Napier Decl. ¶¶ 74–75 (explaining justification for that category of withholding).  In addition to the reasonably foreseeable harms the FBI identified from release of the personally identifying information described above, the Napier Declaration explains why the FBI reasonably foresaw harm to the interests protected by Exemption 7(E) that would flow from release.  *See* Napier Decl. ¶¶ 74–75.  That is, that the "relative utility" of the "techniques could be diminished if the actual techniques were released" and "would enable criminals to educate themselves" and "take countermeasures . . . to continue to engage in activities that violate the law." *Id.*

The Napier Declaration also establishes that the FBI reasonably foresees harm from the release of the classified file numbers, targets of foreign counterintelligence, and foreign activities of the United States the FBI withheld pursuant to Exemption 1.  As Ms. Napier explains, release of the classified file numbers would provide violators of national security laws "with a means of avoiding . . . lawful regulations" and "can reasonably be expected to cause damage . . . to national security."  Napier Decl. ¶ 35.  Release of classified information identifying the targets of FBI

foreign counterintelligence investigations "could permit hostile individuals and foreign governments to appraise the scope, focus, location, target, and capabilities of the FBI's intelligence-gathering methods and activities" and permit those actors "to devise countermeasures." *Id.* ¶ 37. And release of the classified foreign activities of the United States may "jeopardize the fragile relationships that exist between the United States and certain foreign governments" or "lead to diplomatic or economic retaliation." *Id.* ¶¶ 38–39.

The FBI has thus established that it reasonably foresees that disclosure of the withheld information would result in harm to a protected interest.

**CONCLUSION**

For the foregoing reasons, this Court should grant summary judgment for the Defendant.

Dated: March 23, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ELIZABETH J. SHAPIRO
Deputy Director, Federal Programs Branch

*/s/ Jacob S. Siler*
JACOB S. SILER (D.C. Bar No. 1003383)
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel: (202) 353-4556
Fax: (202) 616-8470
jacob.s.siler@usdoj.gov

*Counsel for the Defendant*

15