IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

               *Plaintiff,*

     v.

UNITED STATES DEPARTMENT OF
JUSTICE,

               *Defendant.*

Civil Action No. 1:16-CV-2046(TSC)

**DECLARATION OF AMIE MARIE NAPIER**

I, Amie Marie Napier, declare as follows:

1.      I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division, Federal Bureau of Investigation (FBI), located in Winchester, Virginia. I joined the FBI in April 2009, and prior to my current position, I was the Unit Chief of the Office of Internal Auditing's National Security Unit from July 2024 until September 2025; a Unit Chief, Acting Assistant Section Chief, and Acting Section Chief in the Information Technology Infrastructure Division from February 2020 to July 2024; an Auditor, Unit Chief, Assistant Section Chief, and Acting Section Chief in the Training Division from July 2012 to February 2020; an Auditor and Division Compliance Officer in the Security Division from September 2010 to July 2012; and an Auditor and Compliance Team Lead in the Threat Screening Center from April 2009 to September 2010. Prior to joining the FBI, I served as an Auditor with the Department of Defense's Office of Inspector General from September 2003 to April 2009.

1

2.      In my official capacity as Section Chief of RIDS, I supervise approximately 208 FBI employees, supported by approximately 94 contractors, who staff a total of eight Federal Bureau of Investigation Headquarters units and two field operational service center units. RIDS' collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (Jan. 5, 2010) and the preparation of declarations in support of Exemption 1 claims asserted by the FBI under the FOIA. The Section Chief, RIDS, has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1, respectively. The statements contained in this declaration are based upon my personal knowledge, including information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

3.      Because of the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act of 1974. Specifically, I am familiar with the FBI's handling of Plaintiff's FOIA request that is the subject of this litigation.

4.      In response to Plaintiff's request, the FBI processed and released records to Plaintiff. Of the processed records, Plaintiff is challenging FOIA Exemptions 5, 6 and 7(C)

asserted in 169 pages that were withheld in full.[1] The FBI asserted those FOIA Exemptions only over portions of the pages that were withheld in full based on other exemptions, including Exemption 1, 3, and 7(E).  The FBI thus provides its justification for these additional FOIA exemptions in this Declaration.

5.      The FBI submits this declaration in support of Defendant's Motion for Summary Judgment. Part I of this declaration provides the Court with a summary of the administrative history of Plaintiff's request. Part II, in accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973) provides the FBI's justification for withholding information in full or in part pursuant to FOIA Exemptions 6 and 7(C), 5 U.S.C. § 522(b)(6) and (b)(7)(C), on pages withheld in full within the records responsive to Plaintiff's FOIA request.

## PART 1: ADMINISTRATIVE HISTORY

### FBI FOIPA REQUEST NUMBERS 1354023-000, 1354029-000 AND 1354040-000/-001

6.      By certified mail and electronic mail (email) dated July 7, 2016, Plaintiff submitted a FOIA request to the FBI seeking records pertaining to:

1. Any and all FD-302 forms prepared pursuant to the Federal Bureau of Investigation's investigation of former Secretary of State Hillary Clinton's use of a private e-mail server during her tenure.

2. Any and all records of communication between any agent, employee, or representative of the Federal Bureau of Investigation regarding, concerning, or related to the aforementioned investigation. This request includes, but is not limited to, and [sic] related communications with any official, employee, or representative of the Department of Justice, the Executive Office of the President the Democratic National Committee, and/or the presidential campaign of Hillary Clinton.

---

[1] Upon further review of the challenged 169 pages, the FBI has determined that Exemption 5 was not asserted to withhold any portions of information contained therein. The Plaintiff is not challenging the FBI's withholdings pursuant to FOIA Exemptions 1, 3, 4, or 7(E), which were asserted to withhold portions of information within the challenged pages, as well as to withhold at times, one or more of the 169 pages in full.

3. Any and all records regarding, concerning, or related to the meeting between Attorney General Lynch and former President Bill Clinton on June 27, 2016.

**(Ex. A.)** Plaintiff also requested a waiver of both search and duplication fees associated with the processing of its request pursuant to 5 U.S.C. §§ 552(a)(4)(A)(ii)(II) and (a)(4)(A)(iii). To justify Plaintiff's fee waiver request, Plaintiff's stated:

> Judicial Watch is entitled to a waiver of search fees under 5 U.S.C. § 552(a)(4)(A)(ii)(II) because it is a member of the news media. *Cf. National Security Archive v. Department of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (defining news media within FOIA context), Judicial Watch has also been recognized as a member of the news media in other FOIA litigation. *See, e.g., Judicial Watch, Inc v. U.S. Department of Justice*, 133 F. Supp.2d 52 (D.D.C. 2000); and, *Judicial Watch, Inc. v. Department of Defense*, 2006 U.S. Dist. LEXIS 44003, *1 (D.D.C. June 28, 2006). Judicial Watch regularly obtains information about the operations and activities of government through FOIA and other means, uses its editorial skills to turn this information into distinct works, and publishes and disseminates these works to the public. It intends to do likewise with the records it receives in response to this request.
>
> Judicial Watch also is entitled to complete waiver of both search fees and duplication fees pursuant to 5 U.S.C. § 552(a)(4)(A)(iii). Under this provision, records:
>
>> shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of government and is not primarily in the commercial interest of the requester.

**(Ex. A.)**

7. Upon receipt of Plaintiff's request, the FBI, for administrative tracking purposes, split the request into three separate FOIAs to be handled individually as indicated below.[2]

---

[2] The records Plaintiff is challenging were produced in response to Items 1 and 2 of its July 7, 2016 request, which were assigned FOIPA Request Numbers 1354023-000 and 1354029-000. Since Plaintiff is not challenging any records produced in response to Item 3 of its request, assigned FOIPA Request No. 1354040-000/-001, the FBI is not providing any additional information concerning the administrative history of this request.

| Request Item No. | FOIPA Request Number Assigned |
|:---:|:---:|
| 1 | 1354023-000 |
| 2 | 1354029-000 |
| 3 | 1354040-000 |

*FBI FOIPA Request Number 1354023-000*
*Request Item No. 1: FD-302s regarding E-mail Server Investigation*

8. By letter dated July 15, 2016, the FBI acknowledged receipt of Plaintiff's FOIA request dated July 7, 2016, and notified Plaintiff it had assigned it FBI FOIPA Request Number 1354023-000. The FBI also informed Plaintiff it was searching for information responsive to Plaintiff's request and would inform Plaintiff of the results in future correspondence. Next, the FBI informed Plaintiff its request for a fee waiver was being considered and for the purpose of assessing fees, it determined that as an educational institution, noncommercial scientific institution, or representative of the news media requester, Plaintiff would be charged applicable duplication fees. Additionally, the FBI informed Plaintiff it could check the status of its request and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, the FBI explained that Plaintiff could appeal the FBI's response to the Department of Justice (DOJ), Office of Information Policy (OIP) within ninety (90) days of the letter. Alternatively, Plaintiff could contact the FBI's FOIA public liaison or seek dispute resolution services by contacting the Office of Government Information Services (OGIS). **(Ex. B.)**

9. By letter dated August 3, 2016, the FBI advised Plaintiff it was administratively closing its request, and records responsive to this request would be processed in FOIPA Request No. 1354043-000. Furthermore, the FBI advised Plaintiff it could contact the FBI with any questions at www.fbi.gov/foia, could appeal the FBI's response to OIP within ninety (90) days of

5

the letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting OGIS. **(Ex. C.)**

10.     By letter dated September 1, 2016, incorrectly referencing FOIPA Request No. 1354043-000, the FBI advised Plaintiff that records responsive to its request were available on the FBI's vault and could be located using the search term "Hillary R. Clinton." Furthermore, the FBI advised Plaintiff it could contact the FBI with any questions at www.fbi.gov/foia, appeal the FBI's response to OIP within ninety (90) days of the letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting OGIS. **(Ex. D.)**

11.     By letter dated September 6, 2026, Plaintiff submitted an appeal to OIP, challenging the FBI's closure of FOIPA Request No. 1354023-000 and combining it with another request. **(Ex. E.)**

12.     By letter dated September 15, 2016, OIP acknowledged receipt of the appeal and assigned it appeal number DOJ-AP-2016-005364. **(Ex. F.)**

13.     By letters dated September 23, 2016 and October 17, 2016, incorrectly referencing FOIPA Request No. 1354043-000, the FBI advised Plaintiff that records responsive to its request were available on the FBI's vault and could be located using the search term "Hillary R. Clinton." Furthermore, the FBI advised Plaintiff it could contact the FBI with any questions at www.fbi.gov/foia, appeal the FBI's response to OIP within ninety (90) days of the letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting OGIS. **(Exs. G and H.)**

14.     On October 13, 2016, Plaintiff filed a complaint in the U.S. District Court for the District of Columbia. (ECF No. 1.)

15.     By letter dated December 2, 2016, the FBI advised Plaintiff of some confusion concerning the status of Plaintiff's request submitted to the FBI on July 7, 2016. First, the FBI advised that as to Plaintiff's request for "[a]ny and all FD-302 form prepared pursuant to the [FBI's] investigation of former Secretary of State Hillary Clinton's use of a private e-mail server during her tenure," the FBI had acknowledged receipt of the request and assigned it FOIPA No. 1354023 on July 15, 2016. Second, the FBI advised that it had received a separate request from the Plaintiff for "[a]ny and all memoranda, letters, or other records documenting the [FBI's] recommendation to the Department of Justice that criminal charges are not warranted in the case involving former Secretary of State Hillary Clinton's use of a private email service to conduct official business during her tenure." The FBI assigned this separate request FOIPA No. 1354043. However, the acknowledgement letter for this separate request *inadvertently* included FOIPA No. 1354029, which was assigned to the 2nd part of Plaintiff's July 7, 2016 request for "any and all communication between any agent…related to the aforementioned investigation," Further, the FBI advised it responded to FOIPA Request Number 1354043 by directing Plaintiff to the responsive memorandum posted on it FOIA Library (The Vault) and closed that request. Next, the FBI advised Plaintiff that FOIPA Request Number 1354023 was mistakenly closed and then reopened. Finally, the FBI further advised that it made three releases of records to the Vault which were responsive to this part of Plaintiff's request, that response letters were sent to Plaintiff under FOIPA No. 1354043, and that Plaintiff could appeal the FBI's response to OIP within ninety (90) days of the letter. The letters are addressed in this administrative history at ¶¶ 10 and 13, *supra*. **(Ex. I.)**

16.     By letter dated February 3, 2017, OIP informed Plaintiff that the FBI, on January 17, 2027, advised it that Plaintiff's request had been reopened for processing under FOIPA

Request No. 1354023-001; that because the FBI reopened Plaintiff's request, its appeal from the FBI's administrative closure of its request was moot; and OIP was closing its request. In addition, OIP advised Plaintiff to contact the FBI's Requester Service Center at 540-868-1535 with further questions, or, if dissatisfied with the FBI's final response, it could file an additional appeal with OIP.  **(Ex. J.)**

*FBI FOIPA Request Number 1354029-000*
*Request Item No. 2: Communications regarding E-mail Server Investigation*

17.    By letter dated July 15, 2016, the FBI acknowledged receipt of Plaintiff's FOIA request dated July 7, 2016 and notified Plaintiff it had assigned it FBI FOIPA Request Number 1354029-000. The FBI also informed Plaintiff it was searching for information responsive to Plaintiff's request and would inform Plaintiff of the results in future correspondence. Next, the FBI informed Plaintiff its request for a fee waiver was being considered and for the purpose of assessing fees, it determined as an educational institution, noncommercial scientific institution, or representative of the news media requester, Plaintiff would be charged applicable duplication fees. Additionally, the FBI informed Plaintiff it could check the status of its request and/or contact the FBI with any questions at www.fbi.gov/foia. Furthermore, the FBI explained that Plaintiff could appeal the FBI's response to OIP within ninety (90) days of the letter, contact the FBI's FOIA public liaison, or seek dispute resolution services by contacting OGIS. **(Ex. K.)**

*Request Numbers 2 and 3 Combined*

18.    By letters, dated on or about the 1st Friday of every month, the FBI advised Plaintiff in either its vault letter (a) or a status letter (b) that:

        a.    the records responsive to its requests were available in the FBI's vault and could be located using the search term "Hillary R. Clinton" or

b.    it was continuing to consult with Other Government Agencies (OGAs) and

would issue additional monthly releases as the consultations were completed.

A chart identifying the dates of each letter and type of letter is below.[3]

| Dates of Letters | Type of Letter (Vault Letters or Status Letters) |
|---|---|
| January 6, 2017, February 3, 2017, March 3, 2017, April 7, 2017, May 7, 2017, June 2, 2017, July 7, 2017, August 4, 2017, September 1, 2017, October 6, 2017, November 3, 2017, December 1, 2017 January 5, 2018, February 2, 2018, March 2, 2018, April 6, 2018, May 4, 2018, June 1, 2018, July 6, 2018, August 3, 2018, September 7, 2018, October 5, 2018, November 2, 2018, December 7, 2018, February 8, 2019, March 1, 2019, April 4, 2019, May 3, 2019, June 7, 2019, July 5, 2019, and August 2, 2019 | Vault letters |
| September 6, 2019 | Status letter |
| October 4, 2019 | Vault letter |
| October 30, 2019 | Status letter |
| December 6, 2019, January 3, 2020, February 7, 2020, and March 6, 2020, June 5, 2020 | Vault letter |
| July 2, 2020, August 7, 2020, September 4, 2020, October 2, 2020, November 6, 2020, December 4, 2020, December 31, 2020, and February 5, 2021 | Status letters |
| March 5, 2021 | Vault letter |
| April 2, 2021, May 7, 2021, June 4, 2021, and July 2, 2021 | Status letters |
| August 6, 2021 | Vault letter |

---

[3] The FBI did not provide a vault letter to Plaintiff in January, 2019 as there was a lapse in appropriations and this civil action was stayed. The FBI also provided to Plaintiff its November 8, 2019 response on October 30, 2019. Next, the FBI did not provide any letters to Plaintiff in April or May of 2020 as RIDS ceased FOIA processing on March 17, 2020 due to the Coronavirus. In late April 2020, the FBI only resumed FOIA operations on a limited basis; therefore, the parties herein conferred and agreed the FBI would make its next production on Friday, June 5, 2020. *See*, ECF 26.

| | |
|---|---|
| September 3, 2021, October 1, 2021, November 5, 2021, December 3, 2021, December 31, 2021, January 7, 2022, February 4, 2022, and March 4, 2022 | Status letters |
| April 1, 2022 | Vault letter |
| May 6, 2022 | Status letter |
| June 3, 2022 and July 1, 2022 | Vault letters |
| August 5, 2022, and September 2, 2022 | Status letter |
| October 7, 2022, November 4, 2022, December 2, 2022, January 6, 2023, February 3, 2023, March 3, 2023, April 7, 2023, May 5, 2023, June 2, 2023, and July 7, 2023 | Vault letters |
| August 4, 2023, September 1, 2023, October 6, 2023, November 3, 2023, and December 1, 2023 | Status letters |
| January 1, 2024 | Status letter |
| February 2, 2024, March 1, 2024, and April 5, 2024 | Vault letters |

Furthermore, the FBI advised Plaintiff it could contact the FBI with any questions at www.fbi.gov/foia, appeal the FBI's response to OIP within ninety (90) days of the letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting OGIS. **(Ex. L.)**

19.     By letter dated April 16, 2024, the FBI advised Plaintiff it completed its review of records responsive to Plaintiff's requests. Furthermore, the FBI advised Plaintiff it could contact the FBI with any questions at www.fbi.gov/foia, appeal the FBI's response to OIP within ninety (90) days of the letter, contact the FBI's FOIA public liaison, and/or seek dispute resolution services by contacting OGIS. **(Ex. M.)**

20.     The FBI understands that Plaintiff is challenging the FBI's withholdings based on Exemptions 5, 6, and/or 7(C) in 169 pages withheld in full.

## PART II: JUSTIFICATION FOR NON-DISCLOSURE UNDER THE FOIA

21.     The FBI processed all records responsive to Plaintiff's request to achieve maximum disclosure consistent with the access provisions of the FOIA. Every effort was made to provide Plaintiff with all reasonably segregable, non-exempt information. The FBI did not

withhold any reasonably segregable, nonexempt portions from Plaintiff. Further description of the information withheld, beyond what is provided in this declaration, could reveal the actual exempt information or would employ finite resources only to produce disjointed words, phrases, or sentences that would have minimal or no informational content.

BATES NUMBERING, JUSTIFICATION CODES, AND INDEX

22.    *Bates Numbering & Index:* The Bates numbers for the withheld in full pages Plaintiff is challenging are located at the bottom of each page. Additionally, included as an exhibit to this declaration is an index that identifies the challenged pages that the FBI withheld in full and its justification for doing so. **(Ex. N.)** The index provides a description of each document withheld in full and also indicates the specific FOIA exemptions asserted on each page.[4]

23.    *Justification Codes:* On the Bates-numbered pages provided to Plaintiff and on pages withheld in full and accounted for in the FBI's index, the FBI further categorized its application of exemptions to better explain the nature of the information withheld pursuant to the provisions of the FOIA. Particularly, the FBI applied numerical codes that coincide with specific categories of exempt information. This declaration and index demonstrate that all information withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemptions, or is so intertwined with non-exempt information that segregation is not possible without revealing the underlying exempt information.

24.    Each instance of information withheld pursuant to a FOIA exemption is accompanied by a coded designation that corresponds to one of the categories listed below.[5] For

---

[4] If requested, the FBI can provide copies of all records processed to the Court for *in camera* inspection.
[5] The FBI has implemented standard codes for justification categories. Not all codes are applicable in each FOIA litigation; therefore, the codes in the below "Summary of Exemption Categories" chart may not be sequential if certain codes are not relevant to the records at issue.

example, if "(b)(7)(C)-1" appears on a page, the "(b)(7)(C)" designation refers to FOIA

Exemption 7(C) protecting against unwarranted invasions of personal privacy. The numerical

designation "1" following "(b)(7)(C)" narrows the main category into a more specific

subcategory, such as "Names and Other Identifying Information of FBI Special Agents and

Professional Staff."

| SUMMARY OF EXEMPTION JUSTIFICATION CATEGORIES | |
|---|---|
| **CODED CATEGORIES** [6] | **INFORMATION WITHHELD** |
| **Exemption 1** [7] | **Classified Information** |
| (b)(1)-1 | Information Currently Classified pursuant to Executive Order 13526 *[at times in conjunction with Exemptions 3 and 7(E)]* |
| **Exemption 3** [8] | **Information Protected by Statute** |
| (b)(3)-1 | Federal Grand Jury Information – Federal Rule of Criminal Procedure 6(e) *[at times in conjunction with Exemption 1 and 7(E)]* |
| (b)(3)-5 | Protection of Intelligence Sources and Methods – 50 U.S.C. § 3024(h)(1) *[at times in conjunction with Exemptions 1 and 7(E)]* |
| **Exemptions 6 & 7(C)** | **Clearly Unwarranted/Unwarranted Invasion of Personal Privacy** |
| (b)(6)-1 & (b)(7)(C)-1 | Names and Other Identifying Information of FBI Special Agents and Professional Staff |

---

[6] For the record, the FBI applied other FOIA exemptions to withhold portions of pages within the challenged records that were otherwise withheld in full. Plaintiff is not challenging those exemptions. Although, these Exemption Coded Categories are not being described in detail herein, for informational purposes, they are as follows:  (b)(4) to withhold commercial information; 7(E)-3 to withhold non-public internal FBI telephone numbers, fax numbers and email addresses; 7(E)-5 to protect the focuses of specific FBI investigations; 7(E)-9 to withhold information concerning targets, dates and scope of surveillance; 7(E)-10 to withhold information concerning the targets of pen registers; and 7(E)-12 to withhold the collection and analysis of information obtained under the Bank Secrecy Act.

[7] As previously stated in Footnote 1 *supra*, Plaintiff did not assert any challenges to the FBI's withholding of information pursuant to FOIA Exemption 1. However, insofar as the FBI asserted FOIA Exemption 1 along with other applicable FOIA Exemptions to withhold records in full, the FBI has provided its justification for the withholding of information pursuant to FOIA Exemption 1 in this Declaration.

[8] As previously stated in Footnote 1 *supra*, Plaintiff did not assert any challenges to the FBI's withholding of information pursuant to FOIA Exemption 3. However, insofar as the FBI asserted FOIA Exemption 3 along with other applicable FOIA Exemptions to withhold records in full, the FBI has provided its justification for the withholding of information pursuant to FOIA Exemption 3 in this Declaration.

| (b)(6)-2 & (b)(7)(C)-2 | Names and Other Identifying Information of Third Parties who Provided Information |
|---|---|
| (b)(6)-3 & (b)(7)(C)-3 | Names and Other Identifying Information of Third Parties Merely Mentioned |
| (b)(6)-4 & (b)(7)(C)-4 | Names and Other Identifying Information of Third Parties of Investigative Interest |
| (b)(6)-5 & (b)(7)(C)-5 | Names and Other Identifying Information of Non-FBI Federal Government Personnel |
| (b)(6)-9 & (b)(7)(C)-9 | Names and Other Identifying Information of Commercial Institution Personnel |
| **Exemption 7(E)[9]** | **Law Enforcement Techniques and Procedures** |
| (b)(7)(E)-1 | Sensitive File Numbers *[at time in conjunction with Exemptions 1 and 3]* |
| (b)(7)(E)-4 | Collection and Analysis of Information |
| (b)(7)(E)-8 | Specific Law Enforcement Techniques Used to Conduct National Security Investigations *[at times in conjunction with Exemptions 1 and 3]* |

### EXEMPTION 1 – CLASSIFIED INFORMATION

25.     The FBI's analysis for withholding classified information contained in the records

at issue is based on the standards articulated in the FOIA statute, 5 U.S.C. § 552(b)(1).

Exemption 1 protects from disclosure those records that are:

    a.   specifically authorized under criteria established by an Executive Order to be kept

       secret in the interest of national defense or foreign policy; and

    b.   are in fact properly classified pursuant to such Executive Order.

26.     Before I consider an Exemption 1 claim for withholding agency records, I

determine whether the information in those records satisfies the requirements of Executive Order

(E.O.) 13526, the executive order governing the classification and protection of information that

---

[9] As previously stated in Footnote 1 *supra*, Plaintiff did not assert any challenges to the FBI's withholding of information pursuant to FOIA Exemption 7(E). However, insofar as the FBI asserted FOIA Exemption 7(E), at times in conjunction with Exemptions 1 and 3 to withhold records in full, the FBI has provided its justification for the withholding of information pursuant to FOIA Exemption 7(E) in this Declaration.

13

affects the national security, and whether the information complies with the various substantive

and procedural criteria of that order. Executive Order 13526, signed by President Barack Obama

on December 29, 2009, is the order that currently applies to the protection of national security

information. I am bound by the requirements of E.O. 13526 when making classification

determinations.

27.     For information to be properly classified, and thus properly withheld from

disclosure pursuant to Exemption 1, the information must meet the requirements set forth in E.O.

13526 § 1.1 (a):

1. an original classification authority is classifying the information;

2. the information is owned by, produced by or for, or is under the control of the

   United States Government;

3. the information falls within one or more of the categories of information listed in

   § 1.4 of [the] order; and

4. the original classification authority determines that the unauthorized disclosure of

   the information reasonably could be expected to result in damage to the national

   security, which includes defense against transnational terrorism, and the original

   classification authority is able to identify or describe the damage.

28.     As I will explain in further detail below, in my role as an original classification

authority, I have determined that the information withheld pursuant to Exemption 1 is under the

control of the United States Government, is classified, and requires a classification marking at

the "Secret," level since the unauthorized disclosure of this information reasonably could be

expected to cause damage, serious damage, or exceptionally grave damage to national security.

*See* E.O. 13526 § 1.2(a)(2). In addition to these substantive requirements, certain procedural and

administrative requirements of E.O. 13526 must be followed before information can be considered properly classified, such as, proper identification and marking of documents. In particular, I made certain that all procedural requirements of E.O. 13526 were followed:

a. each document was marked as required and stamped with the proper classification designation;

b. each document was marked to indicate clearly which portions are classified, which portions are exempt from declassification as set forth in E.O 13526 § 1.5(b);

c. the prohibitions and limitations on classification specified in E.O. 13526 § 1.7 were adhered to;

d. the declassification policies set forth in E.O. 13526 §§ 3.1 and 3.3 were followed; and

e. any reasonably segregable portions of the classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

**FINDINGS OF THE DECLARANT REGARDING EXEMPTION 1**

29.     With the above requirements in mind, I personally and independently examined the FBI information withheld pursuant to Exemption 1. I determined all of the substantive, procedural, and administrative requirements set forth above have been satisfied. As a result, I concluded that the information protected pursuant to Exemption 1 was properly classified, continues to warrant classification at the "Secret" level, and is exempt from disclosure pursuant to E.O. 13526 § 1.4(c) - "intelligence activities (including covert action), intelligence sources or methods, or cryptology;" and E.O. 13526 § 1.4 (d) - "foreign relations or foreign activities".

*E.O. 13526 § 1.4(c) – Intelligence Activities, Sources and Methods*

30.    E.O. 13526 § 1.4(c), exempts intelligence activities (including covert action), intelligence sources and methods, and cryptology from disclosure. An intelligence activity or method includes any intelligence action or technique utilized by the FBI against a targeted individual or organization that has been determined to be of national security interest. An intelligence method is used to indicate any procedure (human or non-human) utilized to obtain information concerning such individual or organization. An intelligence activity or method has two characteristics. First, the intelligence activity or method — and information generated by it — is needed by U.S. intelligence/counterintelligence agencies to carry out their respective missions. Second, confidentiality must be maintained with respect to the activity or method if the viability, productivity, and usefulness are to be preserved.

31.    In the records at issue, the FBI withheld information pursuant to Exemption 1 to protect intelligence activities and methods utilized by the FBI to gather intelligence. This information is classified because its release would reveal actual intelligence activities and methods used by the FBI against specific targets of foreign counterintelligence investigations or operations and disclose the intelligence gathering capabilities of the activities and methods directed at specific targets. The information concerning the intelligence activities and methods within the records at issue is very specific in nature, provided during a specific time period, and known to very few individuals.

32.    It is my determination that disclosure of specific information describing the intelligence activities and methods within the records at issue, which are still used by the FBI to gather intelligence information in other investigations, could reasonably be expected to cause damage to national security for the following reasons:

16

a. disclosure would allow hostile entities to discover the current intelligence gathering activities and methods used by the FBI; and

b. disclosure would reveal current targets of specific FBI national security investigations.

With the aid of this detailed information, hostile entities could develop countermeasures which would, in turn, severely disrupt the FBI's intelligence gathering capabilities. This severe disruption would also result in severe damage to the FBI's efforts to detect and apprehend those who violate national security and criminal laws of the United States. The FBI protected the following categories of information specific to intelligence activities and methods because disclosure reasonably could be expected to cause serious damage to the national security of the United States.

*Detailed Intelligence Activities*

33.    The FBI withheld classified information concerning detailed intelligence activity information gathered or compiled by the FBI on a specific individual or organization of national security interest. The disclosure of this information could reasonably be expected to cause damage, serious damage, or exceptionally grave damage to the national security as it would: (a) reveal the actual intelligence activity or method utilized by the FBI against a specific target; (b) disclose the intelligence-gathering capabilities of the activity; and (c) provide an assessment of the intelligence source penetration of a specific target during a specific period of time. This information is properly classified at the "Secret," level pursuant to E.O. 13526 § 1.4(c) and is exempt from disclosure pursuant to FOIA Exemption 1.

34.    *File Numbers*: The FBI withheld classified file numbers assigned to specific intelligence activities, including channelization and dissemination instructions. Their release

would lead to exposure of particular intelligence activities and methods. Individual file numbers are assigned by FBIHQ and field offices and contain a geographical prefix of the originating office and case number, which includes the numerical characterization of the type of investigation, followed by a chronological number assigned to a specific investigation or activity.

35.    The disclosure of an intelligence file number in the aggregate will enable adversaries to attribute any information released from the records, the file number to that particular file. Through analysis of this information, in concert with other information, including publicly available information, adversaries could then identify the specific intelligence activity being utilized. Hence, a partial mosaic of the activity begins to appear as more information is identified as being associated with the particular file number, leading to the exposure of current activities. In other words, disclosure of the file number would allow the adversaries of the United States, or anyone not privileged to this information, to patch bits and pieces of information together until the intelligence activity is determined. The identification of the intelligence activity, which continues to be a source of intelligence to this day, will severely limit its use. In addition, disclosure will inform adversaries of the possible range of the FBI's intelligence capabilities, as well as the intelligence the FBI has gathered, or can collect, concerning them. This knowledge would provide violators of the national security laws of the United States with a means of avoiding of lawful regulations by potentially implementing countermeasures, making future operations more difficult and compromising intelligence operations. Accordingly, release of these file numbers can lead to the exposure of an intelligence activity utilized in FBI, and can reasonably be expected to cause damage, serious damage, or exceptionally grave damage to national security. These file numbers are properly classified at the "Secret" level pursuant to E.O. 13526 § 1.4(c) and are exempt from disclosure pursuant to FOIA Exemption 1.

36.    *Targets of Foreign Counterintelligence:* The FBI withheld classified information identifying targets of FBI foreign counterintelligence investigations. Disclosure of this information could reasonably be expected to cause serious damage to the national security of the United States as it would: (a) reveal the actual intelligence activity used by the FBI to identify a specific target; (b) disclose the intelligence-gathering capabilities of the activity; and (c) provide a description of an intelligence source penetration of a specific target during a specific period of time.

37.    It is my determination that the release of this information could permit hostile individuals and foreign governments to appraise the scope, focus, location, target, and capabilities of the FBI's intelligence-gathering methods and activities, and allow hostile agents to devise countermeasures to circumvent these intelligence activities or methods and render them useless in providing intelligence information. This would severely disrupt the FBI's intelligence-gathering capabilities. This information is properly classified at the "Secret" level pursuant to E.O. 13526 § 1.4(c) and is exempt from disclosure pursuant to FOIA Exemption 1.

*E.O. 13526 § 1.4 (d): Foreign Relations or Foreign Activities*

38.    E.O. 13526, § 1.4 (d) allows for the classification of information related to foreign relations or foreign activities of the United States, including confidential sources. The classified information withheld contains sensitive intelligence information gathered by the United States either about or from a foreign country. This information is sensitive due, in part, to the delicate nature of international diplomacy, and it must be handled with care so as not to jeopardize the fragile relationships that exist between the United States and certain foreign governments.

39.    The unauthorized disclosure of information concerning foreign relations or foreign activities of the United States can reasonably be expected to lead to diplomatic or

economic retaliation against the United States; identify the target, scope, or time frame of intelligence activities of the United States in or about a foreign country, which may result in the curtailment or cessation of these activities; enable hostile entities to assess United States intelligence gathering activities in or about a foreign country and devise countermeasures against these activities; or compromise cooperative foreign sources, which may jeopardize their safety and curtail the flow of information from these sources. Release of this information could reasonably be expected to cause damage, serious damage, or exceptionally grave damage to national security and is therefore properly classified at the "Secret," level pursuant to E.O. 13526, § 1.4(d), and is exempt from disclosure pursuant to Exemption 1.

**FOIA EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE**

40.     FOIA Exemption 3 exempts from disclosure information "specifically exempted from disclosure by statute . . . if that statute (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (A)(ii) establishes particular criteria from withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552 (b)(3). The OPEN FOIA Act of 2009 established an additional requirement that any statute "enacted after the date of enactment of the OPEN FOIA Act of 2009, [must] specifically cite[] to this paragraph" in order to qualify under Exemption.

*(b)(3)-1: Federal Grand Jury Information –*
*Federal Rules of Criminal Procedure, Rule 6(e)*

41.     The FBI asserted Exemption (b)(3) to protect Federal Grand Jury (FGJ) information pursuant to Federal Rule of Criminal Procedure 6(e).[10] As relevant to 5 U.S.C. §

---

[10] As prescribed by 18 U.S.C. § 3771 (subsequently repealed by Pub.L. 100-702, Title IV, § 404(a)(1) (Nov. 19, 1988) and replaced by 28 U.S.C. § 2074), proposed rules become effective ninety days after the Chief Justice reports them to Congress. By order of April 26, 1976, the Supreme Court adopted amendments to the Federal Rules of Criminal Procedure which included

552(b)(3)(B), Rule 6(e) is a statute enacted before the date of enactment of the OPEN FOIA Act of 2009.[11] It is well established that Rule 6(e) embodies a broad, sweeping policy of preserving the secrecy of grand jury material regardless of the substance in which the material is contained. Records responsive to Plaintiff's request details information about one or more federal grand juries empaneled in relation to the investigation at issue and were clearly marked on the face of the documents as relating to a federal grand jury.

42.    Specifically, the responsive records contain information regarding FGJ subpoenas and returns, documents containing analysis of information obtained from FGJ subpoenas, and FBI documents containing detailed information concerning the FGJ subpoenas, including to whom they were directed, and the type of information subpoenaed. The types of withheld FGJ information and a description of the nexus to the secrecy of the grand jury proceedings are as follows:

43.    FGJ subpoenas: This category of information includes to whom FGJ subpoenas were directed and the type of information subpoenaed. This information reveals the strategy and direction of the grand jury's investigation, including where the grand jury sought evidence and the steps the grand jury took in its investigation.

44.    FGJ subpoena returns: This category includes information returned to the FGJ. This information reveals the identities of witnesses and producing parties, the sources of information relied on to develop the facts of the grand jury investigation, the strategy and

---

Rule 6(e) and reported the amendments to Congress. Congress voted to delay the effective date of several of the proposed rules, to include Rule 6(e), "until August 1, 1977, or until and to the extent approved by Act of Congress, whichever is earlier." Pub.L. No. 94-349 § 1, 90 Stat. 822 (1976). Subsequently, Congress, by statute, enacted a modified version of Rule 6(e). *See* Pub.L. No. 95-78, § 2(a), 91 Stat. 319 (1977), FED. R. CRIM. P. 6(e).

[11] The OPEN FOIA Act of 2009 was enacted October 28, 2009. *See* Pub.L. 111-83, 123 Stat. 2142, 2184.

direction of the investigation including where the grand jury sought evidence, the types of evidence the grand jury collected and reviewed, and the steps the grand jury took in its investigation. Where the FBI located FGJ subpoena returns, they were clearly marked on the face of the documents as FGJ information.

45.     <u>Documents summarizing and analyzing information obtained from FGJ subpoenas and returns</u>: This category includes documents containing detailed information concerning the FGJ subpoenas and returns, including summaries and analysis of the information subpoenaed or returned pursuant to FGJ subpoenas. This information reveals the identities of producing parties, the sources of information relied on to develop the facts of the grand jury investigation, the types of evidence the grand jury sought and reviewed, and the overall focus and strategy of the grand jury investigation. Where the FBI located this information within other FBI documents, it was clearly marked on the face of the documents as FGJ information.

46.     Wherever the FBI protected the above categories of information, it found a clear nexus to federal grand jury proceedings on the face of the responsive documents. Disclosure of this information would clearly violate the secrecy of the grand jury proceedings and could reveal the inner workings of a federal grand jury, which the FBI is precluded from disclosing. This is because the information in the above categories relates to the information and evidence requested, collected, and reviewed by a federal grand jury in the scope of its investigation. Thus, the FBI properly withheld this information pursuant to Exemption (b)(3), in conjunction with Rule 6(e).

*(b)(3)-5- National Security Act of 1947, 50 U.S.C. § 3024(h)(1)*

47.     The FBI asserted Exemption 3 to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and

Terrorism Prevention Act of 2004. This statute provides that the Director of National Intelligence (DNI) "shall protect, and shall establish and enforce policies to protect, intelligence sources and methods from unauthorized disclosure."[12] As relevant to 5 U.S.C. § 552(b)(3)(B), the National Security Act of 1947 was enacted before the date of enactment of the OPEN FOIA Act of 2009. On its face, this federal statute leaves no discretion to agencies about withholding from the public information about intelligence sources and methods. Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(h)(1) is absolute. *See CIA v. Sims*, 471 U.S. 159 (1985).

48.     To fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community (IC) for the classification of information under applicable laws, Executive Orders, and other Presidential Directives, and for access to and dissemination of intelligence. 50 U.S.C. § 3024(h)(1). In implementing this authority, the DNI promulgated Intelligence Community Directive 700, which provides that IC elements shall protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure."[13] The FBI is one of 18 member agencies comprising the IC, and as such, must protect intelligence sources and methods. 50 U.S.C. § 3003(4).

49.     Given the plain Congressional mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be

---

[12] Section 102A(i)(1) of the National Security Act was previously codified at 50 U.S.C. § 403(i)(1). As a result of the reorganization of Title 50 of the U.S. Code, Section 102A(i)(1) is now codified at 50 U.S.C. § 3024(h)(1).
[13] Intelligence Community Directive (ICD) 700, dated June 7, 2012, at ¶ E.2.a.

revealed if any of the withheld information is disclosed to Plaintiff. Therefore, the FBI is prohibited from disclosing such information under 50 U.S.C. § 3024(h)(1).[14]

50.    The FBI is asserting Exemption 3 in this case, at times in conjunction with Exemptions 1 and 7(E), to protect information that would reveal intelligence sources and methods. In some instances, information would reveal classified intelligence sources and methods protected by Exemption 1. In some instances, information was protected under Exemption 7(E) because unclassified intelligence sources and methods were employed as law enforcement techniques, procedures, or guidelines, and thus would qualify as both an intelligence source and method under Exemption 3 and a law enforcement technique under Exemption 7(E). Notably, § 3024(h)(1) protects sources and methods regardless of whether they are classified. *See Sims*, 471 U.S. at 176.

**FOIA EXEMPTION 7 THRESHOLD**

51.    Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes. *See* 5 U.S.C. § 552(b)(7). Pursuant to 28 U.S.C. §§ 533, 534, and Executive Order 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM), and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to the national security, and to further

---

[14] Although 50 U.S.C. § 3024(h)(1) does not impose a requirement to articulate harm, disclosure of this information presents a bona fide opportunity for individuals to develop and implement countermeasures, resulting in the loss of significant intelligence information, sources, and methods relied upon by national policymakers and the IC to safeguard national security.

the foreign intelligence objectives of the United States. Under this investigative authority, the responsive records herein were compiled in furtherance of the FBI's investigation known as Midyear Exam. "The FBI opened an investigation, known as 'Midyear Exam' (MYE or Midyear), into the storage and transmission of classified information on [former Secretary of State Hillary] Clinton's unclassified private servers in July 1, 2015."[15] Considering these records were compiled to document the FBI's investigation of possible threats to national security, the FBI determined they were compiled for a law enforcement purpose.

### FOIA EXEMPTIONS (b)(6) AND (b)(7)(C)

#### UNWARRANTED INVASION OF PERSONAL PRIVACY

52.     Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that applies to a particular person falls within the scope of Exemption 6.

53.     Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).[16]

---

[15] Office of the Inspector General, U.S. Dep't of Justice A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election (June 2018) https://oig.justice.gove/sites/default/files/reports/18-04 at 1.

[16] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C). Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion. The privacy interests are balanced against the public's interest in disclosure under both exemptions.

54.    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure. In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue. When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure. For purposes of these exemptions, a public interest exists only when information about an individual, their name, or their identifying information[17] would shed light on the FBI's performance of its mission to protect the American people and uphold the Constitution of the United States, and its function to: protect the United States from terrorist attack; protect the United States against foreign intelligence, espionage, and nefarious cyber operations; combat significant criminal cyber activity, public corruption, transnational criminal enterprises, white-collar crime, and violent crime; and protect civil rights. In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

55.    Furthermore, considering privacy concerns are typically obviated once an individual is deceased,[18] when processing FOIPA requests, the FBI takes several steps to ascertain the current life/death status of the individuals whose names are withheld. The FBI uses the birth date and/or the date of the investigation to determine whether an individual is living or

_____

[17] Hereafter, identifying information includes the following: social security numbers, residence addresses, telephone numbers, personal email addresses; financial/banking information, and professional titles.
[18] In some circumstances, surviving relatives of a deceased individual retain privacy interests in their information, even after the individual's death. *See generally National Archives v. Favish*, 124 S. Ct. 1570 (2004).

deceased, to the extent either or both of these pieces of information are discernable from the file. The date of birth is used to apply the judicially recognized "100-year rule," i.e., if the individual was born more than 100 years ago, the FBI presumes that he or she is dead and the name is released. The FBI also uses institutional knowledge gained from prior FOIA requests or internal records. By using institutional knowledge, the FBI can identify with sufficient certainty the life/death status of certain individuals. If the FBI is unable to determine the life/death status of an individual through the use of these methods, the name of the individual is withheld pursuant to Exemptions 6 and 7(C), when it finds disclosure would constitute an unwarranted invasion of that individuals' privacy should they still be living, and no public interest would be served in releasing the name. It is also the FBI's policy to release names of high-ranking FBI officials as well as individuals in public positions, as they have diminished privacy rights while acting in their official capacity. This policy is applied to the individual's position at the time of the document, and not the present.

56. The FBI applied Exemptions 6 and 7(C) over only those portions of the withheld in full records that contain names and identifying information, as described in more detail below. Although the FBI withheld the contested records in full, that was done in conjunction with other FOIA Exemptions not challenged here. No record was withheld in full solely on the basis of Exemptions 6 and 7(C).

*(b)(6)-1 and (b)(7)(C)-1: Names and Identifying Information of*
*FBI Special Agents and Professional Staff*

57. Within Exemption category (b)(6)-1 and (b)(7)(C)-1, the FBI withheld the names and identifying information of FBI Special Agents (SAs) and professional staff. These FBI SAs and professional staff were responsible for conducting, supervising, and/or maintaining the investigation related to Hillary R. Clinton's E-Mail Server, reflected in the documents responsive

to Plaintiff's request. These responsibilities included, but are not limited to, the following:

coordinating/completing tasks in support of the FBI's investigative and administrative functions,

compiling information, conducting interviews, and/or reporting on the status of the

investigations.

58.    *FBI Special Agents.* Assignments of SAs to any particular investigation are not by

choice. Publicity, adverse or otherwise, arising from a particular investigation, may seriously

prejudice their effectiveness in conducting other investigations or performing their day-to-day

work. The privacy consideration is also applied to protect FBI SAs, as individuals, from

unnecessary, unofficial questioning as to the conduct of this or other investigations/investigative

activities, whether or not they are currently employed by the FBI. FBI SAs conduct official

inquiries into various criminal and national security violation cases. The publicity associated

with the release of an SA's identity in connection with a highly publicized investigation

involving a sensitive controversial subject matter, could trigger hostility toward a particular

SA.[19] During an investigation, an SA may engage with all strata of society, conducting searches

and making arrests, both of which result in reasonable but nonetheless serious disturbances to

people and their lives. Individuals targeted by such investigations, and/or those sympathetic to

those targeted, could seek to inflict violence on an SA based on their participation in an

---

[19] As recently as April 29, 2025, the FBI issued a Public Service Announcement intended to provide the public with information about swatting, how to take protective steps against swatting, and how to report potential incidents. *See* https://www.fbi.gov/investigate/cyber/alerts/2025/threat-actors-use-swatting-to-target-victims-nationwide, last accessed March 18, 2026. In addition, on September 23, 2025, DOJ announced that an individual was arrested on a federal criminal complaint charging him with doxxing–publishing private or identifying information about an individual on the internet with malicious intent-of a lawyer at United States Immigration and Customs Enforcement (ICE). *See* https://www.justice.gov/usao-cdca/pr/santa-monica-man-arrested-federal-criminal-complaint-alleging-he-doxxed-and-harassed, last accessed March 18, 2026.

investigation. This is because an individual targeted by such law enforcement actions may carry a grudge against those involved with the investigation, which may last for years. These individuals may seek revenge on SAs and other federal employees involved in a particular investigation. There is no public interest served by disclosing the SAs' identities because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Thus, disclosure of this information would constitute a clearly unwarranted invasion of their personal privacy; and the FBI properly withheld the names and identifying information of FBI SAs pursuant to Exemptions 6 and 7(C).

59.     *FBI Professional Staff.* The FBI also withheld the names of FBI professional staff pursuant to Exemptions 6 and 7(C). These FBI professional staff were assigned to handle tasks related to the FBI's investigation titled Midyear Exam. Similar to FBI SAs, these FBI employees could be targeted for reprisal based on their involvement in specific investigations/investigative activities. Furthermore, these FBI professional staff were, and possibly are, in positions of access to information regarding official law enforcement investigations and, therefore, could become targets of harassing inquiries for unauthorized access to investigations if their identities were released. Thus, these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, the FBI concluded that no public interest would be served by disclosing the identities of these FBI professional staff to the general public because their identities would not, themselves, significantly increase the public's understanding of the FBI's operations and activities. Accordingly, after balancing these professional staff employees' substantial privacy interests against the non-existent public interest, the FBI determined disclosure of their identities would constitute a clearly unwarranted invasion of their personal

privacy. Therefore, the FBI properly withheld the names of FBI professional staff pursuant to Exemptions 6 and 7(C).

*(b)(6)-2 and (b)(7)(C)-2: Names and Identifying Information of*
*Third Parties who Provided Information*

60.     In Exemption category (b)(6)-2 and (b)(7)(C)-2, the FBI withheld the names and identifying information of third-party individuals who were interviewed, and/or provided information by other means, to the FBI during its investigation of Hillary R. Clinton's E-Mail Server. The identifying information of, and information provided by, these third-party individuals appears within the FBI's files because these individuals willingly divulged information relevant to FBI investigative efforts. These individuals were not of investigative interest to the FBI. Plaintiff has not provided a privacy waiver from the third parties authorizing release of their information, nor has Plaintiff supplied proof of death; therefore, these individuals maintain substantial and legitimate privacy interests in not having their cooperation or connection to FBI law enforcement matters disclosed. Considering the FBI is an investigative and intelligence agency, disclosure of these individuals' names and/or identifying information in connection with FBI records carries an extremely negative connotation.

61.     Disclosure of the identities of individuals who willingly provide information to the FBI could subject these individuals to harassment or embarrassment, undue public attention, and/or unwanted inquiries for information related to their assistance. They could also be targeted for retaliation by investigative subjects or by those who simply disparage cooperation with law enforcement. Exposure of a third party's cooperation with law enforcement could also lead to legal or economic detriment, negative professional and social repercussions, possible physical harm, or even death. Thus, the FBI has determined these individuals maintain substantial privacy interests in not having their identities disclosed.

62.     In contrast, the FBI could identify no public interest in the disclosure of this information because disclosure of these individual's names and identifying information would not shed light on or significantly increase the public's understanding of the operations and activities of the FBI. The FBI concluded the non-existent public interest here was insufficient to override these individuals' substantial privacy interests; therefore, the FBI properly protected these individuals' privacy interests pursuant to Exemptions 6 and 7(C).

*(b)(6)-3and (b)(7)(C)-3: Names and Identifying Information of*
*Third Parties Merely Mentioned*

63.     In Exemption category (b)(6)-3 and (b)(7)(C)-3, the FBI withheld the names and identifying information of third parties who were merely mentioned in the investigative records responsive to Plaintiff's request. The FBI has information about these third parties in its files because these individuals were tangentially mentioned in conjunction with FBI investigative efforts. These individuals were not of investigative interest to the FBI. These third parties maintain substantial and legitimate privacy interests in not having this information disclosed and thus, being connected with an FBI law enforcement matter. Considering the FBI is an investigative and intelligence agency, disclosure of these third parties' names and/or identifying information in connection with an FBI investigation carries an extremely negative connotation. Disclosure of their identities would subject these individuals to possible harassment or criticism and focus derogatory inferences and suspicion on them. The FBI then considered whether there was any public interest that would override these privacy interests and concluded that disclosing information about individuals who were merely mentioned in an FBI investigative file would not significantly increase the public's understanding of the operations and activities of the FBI. Accordingly, the FBI properly protected these individuals' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

31

*(b)(6)-4 and (b)(7)(C)-4: Names and Identifying Information of*
*Persons of Investigative Interest*

64.    In Exemption category (b)(6)-4 and (b)(7)(C)-4, the FBI withheld the names and identifying information of third parties who were of investigative interest to the FBI. Being identified as a subject of FBI investigative interest carries a strong negative connotation and a stigma, whether or not these individuals ever committed criminal acts. Release of the identities of these individuals to the public could subject them to harassment or embarrassment, as well as undue public attention. Furthermore, it could result in professional and social repercussions, due to resulting negative stigmas. Accordingly, the FBI determined these individuals maintain substantial privacy interests in not having their identities disclosed. In contrast, disclosing personal information about these individuals would not significantly increase the public's understanding of the FBI's performance of its mission, and so the FBI concluded that there was no public interest here sufficient to override these individuals' substantial privacy interests. For these reasons, the FBI properly withheld this information pursuant to Exemptions 6 and 7(C).

*(b)(6)-5 and (b)(7)(C)-5: Names and Identifying Information of*
*Personnel from Non-FBI Federal Agencies*

65.    In Category (b)(6)-5 and (b)(7)(C)-5, the FBI withheld the names and identifying information of personnel from non-FBI federal government agencies who provided information to or otherwise assisted the FBI in its investigation known as Midyear Exam. The rationale for protecting the identities of other government employees is the same as the rationale for protecting the identities of FBI employees. See ¶¶ 57-59, *supra*. Publicity, adverse or otherwise, concerning the assistance of these other agency employees in an FBI investigation would seriously impair their effectiveness in assisting or participating in future FBI investigations. The privacy consideration also protects these individuals from unnecessary, unofficial questioning as

to the FBI investigation. It is possible for a person targeted by law enforcement action to carry a grudge which may last for years, and to seek revenge on the personnel involved in the investigation at issue in these FBI records. The publicity associated with the release of their names and/or identifying information in connection with this investigation could trigger hostility towards them by such persons. Therefore, these employees maintain substantial privacy interests in not having their identities disclosed in this context. In contrast, there is no public interest to be served by the disclosure of these employees' names and/or identifying information because their identities, by themselves, would not demonstrate how the FBI performed its statutory mission and thus, would not significantly increase the public's understanding of the FBI's operations and activities. Accordingly, the FBI properly protected these employees' privacy interests pursuant to FOIA Exemptions 6 and 7(C).

*(b)(6)-9 and (b)(7)(C)-9: Names and Identifying Information of*
*Commercial Institution Personnel*

66.    In Exemption category (b)(6)-9 and (b)(7)(C)-9, the FBI withheld the names and identifying information of private, commercial institution employees who provided assistance to the FBI during its investigation of Hillary R. Clinton's Email Server. These individuals assisted the FBI in their official capacities and were able to do so due to their employment.[20] Identifying them in this context (within law enforcement records) could subject them to unofficial inquiries for information related to their assistance, not anticipated by their contact with the FBI. Additionally, as a result of their cooperation, they could be targeted for retaliation by those who disparage cooperation with law enforcement. Thus, these individuals maintain substantial privacy interests in not being disclosed in this context. In contrast, there is no public interest to

---

[20] The FBI did not apply Exemption Coded Category (b)(6)/(b)(7)(C)-9 to withhold the names of commercial institutions themselves.

33

be served by publicly disclosing their identities, as doing so would not increase public understanding of FBI operations and activities. Accordingly, the FBI protected these individuals' names and identifying information pursuant to Exemptions 6 and 7(C).

### EXEMPTION (b)(7)(E) INVESTIGATIVE TECHNIQUES AND PROCEDURES

67.    FOIA Exemption 7(E) provides protection for "law enforcement records [which]…would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).

68.    The FBI asserted Exemption 7(E) to withhold information from these records, the release of which would disclose techniques and/or procedures for law enforcement investigations or prosecutions or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

69.    Within the responsive documents, the FBI applied Exemption 7(E) to non-public investigative techniques and procedures utilized by the FBI to pursue its law enforcement mission, and also to non-public details about techniques and procedures that are otherwise known to the public. Specifically, the FBI asserted Exemption 7(E) to protect the following categories of information.

*7(E)-1: Sensitive Investigative File Numbers*

70.    In Exemption category 7(E)-1, the FBI protected sensitive investigative file numbers. The FBI determined this exemption is appropriate for protecting these file numbers as the release of file numbering conventions identifies the investigative interest or priority given to such matters. The file numbers the FBI protected are not known to the general public. These file

numbers contain three separate portions. The first portions of these file numbers consist of FBI file classification numbers which indicate the types of investigative/intelligence gathering programs to which these files pertain. Many of the FBI's classification numbers are public, which makes disclosure of this information even more telling. Release of known file classification numbers in the context of investigative records would immediately reveal the types of investigations being pursued, and thus the types of investigative techniques and procedures available to FBI investigators, and/or non-public facets of the FBI's investigative strategies. For example, revealing the FBI has a money laundering investigative file on a subject who was only known to be investigated for crimes related to public corruption would reveal key non-public information about the FBI's investigative strategies and gathered evidence. Additionally, releasing non-public FBI file classification numbers would reveal critical information about non-public investigative techniques and procedures, and provide criminals and foreign adversaries the ability to discern the types of highly sensitive investigative strategies the FBI is pursuing whenever such file classification numbers are present within these and other sensitive FBI investigative records.

71.     The protected investigative file numbers also contain two letter office of origin codes, indicating which FBI field office or overseas FBI legal attaché originated the investigations at issue. Providing this information, in many instances, would provide critical information about where and how the FBI detected particular criminal behaviors or national security threats, and reveal key pieces about the FBI's non-public FBI investigations or intelligence/evidence gathering sources and methods. Revealing this information could also risk disclosing unknown FBI investigations or intelligence gathering initiatives by revealing interests in varying areas of FBI investigative responsibility. Releasing this information could also

35

provide significant information about the FBI's possible failure to detect certain types of criminal behavior. For example, a criminal operating out of San Francisco, California with ties to a criminal organization under investigation in the FBI's Seattle Field Office could request the FBI's Seattle Field Office's investigative file. If the FBI were to reveal all of the originating office codes in the investigative files present in Seattle's file, and there was no indication the FBI ever pursued an investigation in San Francisco, the criminal could reasonably assume the FBI failed to locate any evidence of their wrongdoing, emboldening them to continue their activities, undeterred.

72.    The third portion of these investigative files consists of the numbers given to the unique investigative initiatives these files were created to memorialize. Releasing these singular file numbers would provide criminals and foreign adversaries with a tracking mechanism by which they can place particular files/investigations within the context of larger FBI investigative efforts. Continued release of sensitive investigative file numbers would provide criminals with an idea of how FBI investigations may be interrelated and when, why, and how the FBI pursued different investigative strategies. This would provide criminals with a means of judging where the FBI allocates its limited investigative resources, how the FBI responds to different investigative circumstances, what the FBI knows and when/how they obtained the knowledge, and if there are knowledge gaps in the FBI's gathered intelligence.

73.    In summary, repeatedly releasing sensitive FBI investigative file numbers would allow determined criminals and foreign adversaries to obtain an exceptional understanding of the body of investigative intelligence available to the FBI; and where, who, what and how it is investigating certain detected activities. Release of this information would enable these criminals and foreign adversaries to predict FBI investigations and structure their behavior to avoid

36

detection and disruption by FBI investigators, enabling them to circumvent the law. Accordingly, the FBI properly asserted FOIA Exemption 7(E), in conjunction with Exemptions 1 and 3, to protect this type of information.

*7(E)-4: Collection and Analysis of Information*

74.    In Exemption category 7(E)-4, the FBI protected the methods the FBI uses to collect and analyze information it obtains for investigative purposes. The release of this information would disclose the identity of methods used in the collection and analysis of information, including how and from where the FBI collects information and the methodologies employed to analyze it once collected. These methods are still in use today.

75.    Disclosures would enable subjects of FBI investigations to circumvent these or similar currently used techniques. The relative utility of these techniques could be diminished if the actual techniques were released in this matter. This in turn would facilitate the accumulation of information by investigative subjects regarding the circumstances under which the specific techniques were used or requested and usefulness of the information obtained. Release of this type of information would enable criminals to educate themselves about the techniques employed for the collection and analysis of information and therefore allow these individuals to take counter measures to circumvent the effectiveness of these techniques and to continue to engage in activities that violate the law. Accordingly, the FBI has properly withheld the information pursuant to FOIA Exemption 7(E).

*7(E)-8: Specific Law Enforcement Technique Utilized to Conduct National Security Investigations*

76.    In Exemption category 7(E)-8, the FBI protected sensitive investigative techniques used to conduct national security investigations, in conjunction with FOIA Exemptions 1 [E.O. 13526, § 1.4(c)] and 3 [50 U.S.C. § 3024(h)(1)]. Due to the nature of these

37

techniques they qualify for protection pursuant to FOIA Exemption 7(E), as they are non-public law enforcement techniques, the release of which would enable criminals to circumvent the law; they also qualify for protection pursuant to Exemptions 1 and 3 as they are also intelligence gathering sources and methods used in a national security context. These investigative techniques are highly sensitive and releasing additional information about them or discussing them in greater detail here would reveal their very nature, and when and how they are utilized by the FBI in criminal and national security investigations. This would enable criminals and foreign adversaries targeted by these techniques to predict and circumvent their use by the FBI. As such, the FBI asserted Exemption 7(E), in conjunction with Exemptions 1 and 3, to protect these sensitive national security investigative techniques.

## FORESEEABLE HARM STANDARD

77.     The FOIA Improvement Act of 2016 generally adopted the *foreseeable harm standard* and made it statutory, advising that agencies shall withhold information under the FOIA only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption or disclosure is prohibited by law. Accordingly, the FBI's analysis of records responsive under the FOIA is a two-part process. First, the FBI determines whether a record is exempt pursuant to one or more FOIA exemptions. Second, if the record is exempt pursuant to one or more FOIA exemptions, the FBI then considers whether foreseeable harm would result from disclosure of the record. For the withheld records at issue here, the FBI conducted this two-part analysis and only withheld records where it determined the withheld record met both of these criteria. The FBI has concluded that disclosing the identifying information the FBI withheld under Exemptions 6 and 7(C) is an unwarranted risk to the privacy of the named individuals. The FBI has also concluded that disclosing the information the FBI withheld under

38

Exemption 7(E) could reasonably be expected to risk circumvention of the law. The FBI's

foreseeable harm is more fully described within each of the above coded exemption justification

categories.[21]

## SEGREGABILITY

78.    As discussed in ¶ 4 *supra*, the Plaintiff is challenging FOIA Exemptions 5, 6, and

7(C) identified in 169 pages Withheld in Full (WIF). Following its segregability review, RIDS

determined that all information on these pages was either fully covered by non-challenged FOIA

Exemptions 1, 3 and/or 7(E), and release of any exempt information would trigger foreseeable

harm to one or more of these FOIA exemptions, or determined that any non-exempt information

on these pages was so intertwined with exempt material, no information could be reasonably

segregated for release. Any further segregation of this intertwined material would employ finite

resources only to produce disjointed words, phrases, or sentences that, taken separately or

together, would have minimal or no informational content. Therefore, none of the disputed FOIA

Exemptions resulted in withholding information that would not have been withheld under a

different, non-challenged FOIA Exemption.

## CONCLUSION

79.    The FBI processed the challenged records under the access provisions of the

FOIA to achieve maximum disclosure. Information was properly withheld pursuant to FOIA

Exemptions 1, 3, 4, 6, 7(C), and 7(E). The FBI carefully examined the documents and

determined the information withheld from Plaintiff in this case, if disclosed, would reveal

classified information; would reveal statutorily protected information; would cause a clearly

---

[21] 5 U.S.C. § 552(a)(8)(A)(i)(II) does not impose a requirement to articulate harm for Exemption
(b)(3).

unwarranted invasion of personal privacy; could reasonably be expected to constitute an

unwarranted invasion of personal privacy; and/or would disclose techniques and procedures for

law enforcement investigations. After extensive review of the documents at issue, the FBI

determined that there is no further non-exempt information that can be reasonably segregated

and released without revealing exempt information.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct, and that Exhibits A-N attached hereto are true and correct copies.

AMIE NAPIER
Digitally signed by AMIE NAPIER
Date: 2026.03.23 11:28:00 -04'00'

Amie Marie Napier
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

41